# GERAGOS & GERAGOS

A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA  90017-3411
TELEPHONE  (213) 625-3900
FACSIMILE  (213) 232-3255
GERAGOS@GERAGOS.COM

MARK J. GERAGOS          SBN 108325
mark@geragos.com
BEN J. MEISELAS          SBN 277412
ben@geragos.com
MATTHEW M. HOESLY        SBN 289593
mhoesly@geragos.com

**GRAYLAW GROUP, INC.**
21515 Hawthorne Blvd, Suite 450
Torrance, CA 90503
Tel: (310) 540-2000 ext. 274
Fax: (310) 540-6609
MICHAEL E. ADLER         SBN 236115
meadler@graylawinc.com

**DHILLON LAW GROUP INC.**
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593
HARMEET K. DHILLON       SBN: 207873
harmeet@dhillonlaw.com
NITOJ P. SINGH           SBN: 265005
nsingh@dhillonlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

AMERICAN VIDEO DUPLICATING,
INC., a California corporation; TUSH LAW
LTD., a California limited partnership, and
KENNETH M, HAHN, a sole proprietor,
DBA CAL STATE FINANCIAL,
individually and on behalf of a class of
similarly situated businesses and individuals,

Plaintiffs,

vs.

CITIGROUP INC., CITIBANK, N.A.; U.S.
BANCORP., U.S. BANK, N.A.;

Case No.:

**CLASS ACTION COMPLAINT FOR
DECLARATORY RELIEF AND
DAMAGES**

**(1) DECLARATORY RELIEF**

**(2) UNFAIR BUSINESS
PRACTICES IN VIOLATION
OF CALIFORNIA BUSINESS &
PROFESSIONS CODE § 17200,
*et seq.***

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., WELLS FARGO & CO., WELLS FARGO N.A.; BANK OF AMERICA CO., BANK OF AMERICA N.A.; MUFG BANK LTD., MUFG UNION BANK N.A.; LIVE OAK BANCSHARES INC., LIVE OAK BANKING COMPANY; PAYPAL HOLDINGS, INC.; NEWTEK BUSINESS SERVICES, INC.; HARVEST SMALL BUSINESS FINANCE; and; DOE LENDERS 1 to 4,975, inclusive,

Defendants.

**(3) UNJUST ENRICHMENT**

**DEMAND FOR JURY TRIAL**

Plaintiffs American Video Duplicating, INC., Tush Law, LTD., and Kenneth M. Hahn, a sole proprietor, dba Cal State Financial, bring this class action complaint on behalf of themselves and those similarly situated (hereinafter "Plaintiffs) against Defendants Citigroup, INC., Citibank N.A., U.S. Bancorp, U.S. Bank N.A., JPMorgan Chase & CO., JPMorgan Chase Bank, N.A., Wells Fargo & CO., Wells Fargo N.A.; Bank of America CO., Bank of America N.A., MUFG Bank LTD., Union Bank of California N.A.; Live Oak Bancshares Inc., Live Oak Banking Company; PayPal Holdings, Inc; Newtek Business Services, Inc.; Harvest Small Business Finance, LLC.; and DOE LENDERS 1 to 4,975, inclusive, (hereinafter "Defendants") to stop Defendants' unlawful conduct and to obtain monies owed as a result of Defendants' conduct. For their class action complaint, Plaintiffs allege as follows based upon their personal knowledge and upon information and belief, including investigation conducted by their attorneys.

## PARTIES

1.      Plaintiff, American Video Duplicating, Inc. ("AVD") is a California corporation organized and authorized to do business and doing business in the State of California. Among providing other services, AVD is a consulting firm in good standing with the State of California. President, David M. Wohl ("Wohl"), has been a business consultant since 1996. In the 1980s, Wohl passed all four parts of the CPA Exam. Wohl

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No.28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

1    was licensed as a CPA on or about December 16, 2010. AVD is located at 12722 Riverside

2    Drive, #204, Valley Village, CA 91607.

3        2.      Plaintiff, Tush Law Ltd., ("TLL") is a California limited partnership

4    authorized to do business and doing business in the State of California.  TLL is a law firm

5    in good standing with the State of California. President, Alan S. Turlington ("Turlington")

6    received his JD from Georgetown University Law Center and became a licensed California

7    attorney on December 3, 2013. Turlington founded TLL on January 3, 2018. TLL is located

8    at 2024 N. Broadway, Suite 204, Santa Ana, CA 92706.

9        3.      Plaintiff, Kenneth M. Hahn, DBA Cal State Financial ("CSF") is a sole

10   proprietorship organized and authorized to do business and doing business in the State of

11   California. CSF has been in business for approximately twenty-nine (29) years, and Hahn

12   has been a Registered Tax Preparer in good standing with the State of California for seven

13   (7) years. CSF is located at 1108 Sartori Ave., #200, Torrance, CA 90501.

14       4.      At all relevant times, Defendant, Citigroup, Inc., is a Delaware corporation

15   and the parent company of Citibank., N.A. Citigroup, Inc., engages in the provision of

16   financial products and services in all 50 states and internationally. Citigroup, Inc., is

17   headquartered in New York, New York. Through its subsidiaries, Citigroup, Inc., conducts

18   substantial business in the State of California.

19       5.      At all relevant times, Defendant Citibank N.A., ("Citi") is the consumer

20   division of financial services multinational Citigroup, Inc and is headquartered in New

21   York, New York. Citi conducts substantial business in this District.

22       6.      At all relevant times, Defendant U.S. Bancorp, is a Delaware corporation

23   and the parent company of U.S. Bank., N.A. U.S. Bancorp is an American bank holding

24   company that provides banking, investment, mortgage, trust and payment services to

25   individuals, businesses, governmental entities, and other financial institutions. U.S.

26   Bancorp is headquartered in Minneapolis, Minnesota. Through its subsidiaries, U.S.

27   Bancorp conducts substantial business in the State of California.

28       7.      At all relevant times, Defendant U.S. Bank N.A., ("US Bank") operates

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

more than 3,000 banking offices and nearly 5,000 ATMS, and provides a comprehensive line of banking, brokerage, insurance, investment, mortgage, trust and payment-services products to consumers, businesses and institutions. US Bank is headquartered in Minneapolis, Minnesota, and conducts substantial business in this District.

8.     At all relevant times, Defendant JPMorgan Chase & CO., is a Delaware corporation and the parent of all Chase entities. JPMorgan Chase & CO. is a diversified financial services company providing banking, insurance, investments, mortgage banking, and consumer finance to individuals, businesses and institutions in all 50 states and internationally. Chase & CO. is headquartered in New York, New York. Through its subsidiaries, JPMorgan Chase & CO. conducts substantial business within this District.

9.     At all relevant times, Defendant JPMorgan Chase Bank N.A., ("Chase") is the main baking of Chase & CO. and is headquartered in Columbus, Ohio. Chase conducts substantial business within this District.

10.     At all relevant times, Defendant Wells Fargo & CO. is a Delaware corporation and the parent company of Wells Fargo Bank N.A. Wells Fargo & CO. is an American multinational financial services company headquartered in San Francisco, California. Through its subsidiaries, Wells Fargo & CO. conducts substantial business within this District.

11.     At all relevant times, Defendant Wells Fargo Bank N.A., ("Wells Fargo") is the national bank and subsidiary of Wells Fargo & CO. Wells Fargo is headquartered in San Francisco, California, and conducts substantial business within this District.

12.     At all relevant times, Defendant Bank of America, CO., is a Delaware corporation and the parent company of Bank of America N.A. Bank of America, CO., is an American multinational investment bank and financial services company and headquartered in Charlotte, North Carolina. Through its subsidiaries, Bank of America, CO. conducts substantial business within this District.

13.     At all relevant times, Defendant Bank of America, N.A., ("BofA") is a federally chartered bank and a subsidiary of Bank of America, CO., BofA is headquartered

1   in Charlotte, North Carolina and conducts substantial business within this District.

2       14.   At all relevant times, Defendant MUFG Bank Ltd., is a Japanese bank and

3   wholly owns MUFG Union Bank, N.A. ("MUFG").  MUFG is a subsidiary of MUFG Bank

4   Ltd., and an American full-service bank with 398 branches in California, Washington, and

5   Oregon. MUF is headquartered in New York, New York, and conducts substantial business

6   within this District.

7       15.   At all relevant times, Defendant Live Oak Bancshares Inc., is a North

8   Carolina corporation and the holding company of Live Oak Banking Company. Live Oak

9   Bancshares is in the business of State commercial banks and headquartered in Wilmington,

10  North Carolina.

11      16.   At all relevant times, Defendant Live Oak Banking Company ("Live Oak")

12  is a subsidiary of Live Oak Bancshares, Inc. Live Oak specializes in originating business

13  loans that are guaranteed by the SBA. Live Oak is headquartered in Wilmington, North

14  Carolina, and conducts substantial business within the State of California.

15      17.   At all relevant times, Defendant PayPal Holdings, Inc. ("PayPal") is a

16  Delaware corporation and authorized to do business and conducting business in the State of

17  California. PayPal is an American company operating a worldwide online payment system

18  that supports online money transfers and serves as an electronic alternative to traditional

19  paper methods like checks and money orders. PayPal is headquartered in San Jose,

20  California.

21      18.   At all relevant times, Defendant Newtek Business Services, Inc. ("Newtek")

22  is a New York corporation and authorized to do business and conducting business in the

23  State of California. Newtek is a services business that provides solutions designed to help

24  organizations grow sales, reduce, costs, and minimize risk. Newtek is headquartered in New

25  York, New York.

26      19.   At all relevant times, Defendant, Harvest Small Business Finance

27  ("Harvest") is a limited liability company organized and authorized to do business and

28  doing business in the State of California. Harvest is a non-bank lender with the specific goal

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

1  of serving small business borrowers and is located at 24422 Avenida De La Carlota, Suite

2  232, Laguna Hills CA 92653.

3       20.     In this Complaint, when reference is made to any act of any Defendant, such

4  shall be deemed to mean that officers, directors, agents, employees, or representatives of

5  the Defendant named in this lawsuit committed or authorized such acts, or failed and

6  omitted to adequately supervise or properly control or direct their employees while engaged

7  in the management, direction, operation or control of the affairs of the Defendant and did

8  so while acting within the scope of their employment or agency.

9       21.     Plaintiffs are unaware of the names, identities, or capacities of the

10  Defendants sued as Doe Lenders 1 to 4,975, but are informed and believe and thereon allege

11  that such fictitiously-named defendant is responsible in some manner for the damages and

12  abridgment of rights described in this Complaint. Plaintiffs will amend this Complaint to

13  state the true names, identities, or capacities of such fictitiously-named defendants when

14  ascertained.

15  **JURISDICTION AND VENUE**

16       22.     The Court has original jurisdiction over this Action under the Class Action

17  Fairness Act, 28 U.S.C. §1332(d), because this is a class action in which (1) at least some

18  members of the proposed Class have different citizenship from Defendant(s); (2) the proposed

19  class consists of more than 100 persons or entities; and (3) the claims of the proposed members

20  of the Class exceed $5,000,000 in the aggregate.

21       23.     This Court has personal jurisdiction over Defendants because Defendants do

22  business in this District, and a substantial number of the events giving rise to the claims alleged

23  herein took place in California.

24       24.     The venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because

25  a substantial part of the events or omissions giving rise to the alleged claims occurred in this

26  District given that Plaintiffs applied for the PPP loans while in this District and Defendants,

27  marketed, promoted, and took applications for the PPP loans in this District.

28

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

**BACKGROUND**

25.    On January 21, 2020, the Center for Disease Control and Prevention ("CDC") confirmed the first U.S. case of a new coronavirus, also known as COVID-19.

26.    On January 30, 2020, the World Health Organization ("WHO") declared the coronavirus outbreak to be a "public health emergency of international concern."

27.    On March 11, 2020, the WHO declared that the spread of COVID-19 had become a pandemic.

28.    On March 19, 2020, Governor Gavin Newsom issued an executive Stay at Home Order in the State of California to prevent the spread of COVID-19.

29.    On March 25, 2020, in response to the economic damage perpetrated by the COVID-19 crisis, The United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act. The CARES Act was passed by the House the following day and signed into law by President Trump on March 27, 2020. This legislation included $377 billion in federally funded loans to small businesses and a $500 billion governmental lending program.

30.    As part of the CARES Act, the Federal Government created a $349 billion loan program, as referred to as the "Paycheck Protection Program" (PPP), for small businesses with funds available for loans/grants originated from February 15 through June 30, 2020. The PPP was created to provide American small businesses with eight weeks of cash-flow assistance, with a certain percentage forgivable if utilized to retain employees and fund payroll. The loans are backed by the United States Small Business Administration (SBA). The SBA is a United States government agency that provides support to entrepreneurs and small businesses. The loans were backed by the Federal Government and SBA but administered by private banks.

31.    The United States Department of the Treasury announced on April 3, 2020, that small businesses and sole proprietors could apply and receive loans to cover their payroll and other expenses through SBA lenders (the "Lenders"). Beginning on April 10, 2020, independent contractors and self-employed individuals could apply as well. [1]

---

[1] https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf

- 7 -

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

32.     On April 24, 2020, President Trump signed the Paycheck Protection Program and Health Care Enhancement Act ("PPPEA"). The PPPEA added an additional $310 billion in PPP funding, bringing the total PPP funds available to $659 billion.

33.     Under the United States Department of the Treasury's PPP Information Sheet Lenders ("PPP ISL"), guidance is provided that Lenders will be compensated for processing fees based on the balance of the financing at the time of final disbursement.[2] SBA will pay Lenders fees for processing PPP loans in the following amounts:

- Five (5) percent for loans of not more than $350,000;
- Three (3) percent for loans of more than $350,000 and less than $2,000,000; and
- One (1) percent for loans of at least $2,000,000.[3]

34.     The PPP ISL not only includes compensation for Lenders but also for agents. "An 'Agent' is an authorized representative and can be:

- An attorney;
- An accountant;
- A consultant;
- Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant;
- Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans;
- A loan broker; or
- Any other individual or entity representing an applicant by conducting business with the SBA."[4]

35.     Additionally, PPP ISL guidance provides that, "Agent fees **will** be paid out of lender fees. The lender **will** pay the agent. Agents may not collect any fees from the applicant.

---

[2] https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf

[3] *Id.*

[4] *Id.*

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No.28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP "[5] loan is as follows:

- One (1) percent for loans of not more than $350,000;
- 0.50 percent for loans of more than $350,000 and less than $2 million; and
- 0.25 percent for loans of at least $2 million.

36.     As mentioned above, the PPP ISL established limits on agent fees. The SBA Regulations and Treasury Guidance determined that the agent fee limits set forth above are reasonable based upon the application requirements and the fees that Lenders receive for making PPP loans.

37.     Within this context, Defendants served as the intermediary between small businesses and federal funds. Plaintiffs served as the Agent for the small businesses applying for the PPP loans with the Defendants.

38.     Based on information and belief, Defendants received approval from the SBA and funded loans for numerous businesses, yet failed to issue compensation to Plaintiffs (or "Agents"), that facilitated the loan process between Lenders and applicants.

39.     Defendants are refusing to pay or are willing to pay only a partial percentage of the monies owed to Agents.

40.     As calculated on Attachment A, Plaintiffs, on behalf of themselves and the proposed Class (as defined below), seek $3,848,597,082.00, to be set aside pro-rata by the banks for distribution to a designee of the borrower of the PPP loan.

## FACTUAL ALLEGATIONS

41.     On or about March 25, 2020, Plaintiffs became aware that the CARES Act had been signed into law. Plaintiffs, knowing that the COVID-19 crisis would seriously impact its clients' businesses, sought to obtain a PPP loan through various Lenders on behalf of its clients.

42.     Each Plaintiff spent between 50-100 hours familiarizing itself with the Act, and

---

[5] Id. (Emphasis added)

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

in particular, Section 1102, which temporarily permits SBA to guarantee 100% of 7(a) loans under PPP and Section 1106, which provides forgiveness of up to the full principal amount of qualifying loans guaranteed under the "Paycheck Protection Program".

43.     In or about April 2020, Plaintiffs assisted their clients in the gathering and analysis of their documents, as well as the calculation and preparation of their Applications.

44.     Based on PPP ISL, Plaintiffs understood that they were not allowed to charge their clients a fee relating to the Application and that the only compensation they would receive would be the mandated Agent fees.

45.     Plaintiffs spent between two (2) and ten (10) hours on each application, depending on the complexity of the client and the amount of available data.

46.     To fill out the Applications, Plaintiffs assisted clients in gathering the required information and filling out the applications, including the following documents, if applicable:

    a.  Loan Calculator Spreadsheet;

    b.  SBA Form 2483 – Each Owner 20% or more or Officer;

    c.  Addendum A: Affiliates – Each Owner 20% or more must complete;

    d.  Information if the applicant received an SBA Economic Injury Disaster Loan ("EIDL");

    e.  Certificate of Beneficial Ownership Interest – Each Owner 20% or more must complete;

    f.  Driver's License for each 20% or more owner;

    g.  Articles of Incorporation or Articles of Organization;

    h.  2019 IRS/State Payroll Forms:  940 or all four quarterly 941;

    i.  2019 Payroll Summary Report by Employee;

    j.  2019 Health Insurance Premium Paid – Each monthly statement or year-end summary;

    k.  2019 Retirement Matching Plan Paid – Each monthly statement or year-end summary;

    l.  2020 1st QTR 941 Form;

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

m.  January 2020 Payroll Summary by Employee;

n.  February 2020 Payroll Summary by Employee;

o.  March 2020 Payroll Summary by Employee;

p.  Health Insurance Premium Paid – January, February, and March 2020;

q.  Retirement Matching Plan Paid – January, February, and March 2020;

r.  Wiring Instruction; and

s.  Copy of most recent Business Bank Statement (collectively, letters a – s above may herein be referred to as the "Application").

47.  In most instances, the Application had to be amended or redone at least once as the SBA or the Lenders changed the forms, added new documentation and addendum requirements, or admittedly refused to compensate the mandated Agent fees. Plaintiffs spent additional hours making the required changes, and in some cases, resubmitted the entire Application because Defendants required Plaintiff to do so, or because Defendants outright refused to compensate Plaintiffs.

48.  Plaintiffs believed in good faith that they would receive the Agent fees from the Lenders upon funding of their clients' Applications.

49.  On information and belief, Defendants did not comply with the SBA or Treasury Regulations in distributing PPP funds. Instead, Defendants either retained all of the Agent Fees or stated that they would only pay to the Agent 50% of the required fees.

50.  As a result of the conduct of Defendants, Plaintiffs suffered financial harm, wrongfully lost the opportunity to collect compensation during unprecedented economic times, and generally lost economic opportunities to conduct business due to decreased operating capital.

## CLASS ACTION ALLEGATIONS

51.  As noted above, Plaintiffs bring this action on behalf of themselves and all others similarly situated as a state and nationwide Class, defined as indicated below.

52.  Plaintiffs seek to represent a Class composed of and defined as follows:

a.  All agents as defined by the SBA Regulations that facilitated small businesses

to receive a loan under the PPP, i.e., met the criteria for eligibility and were not otherwise ineligible, between February 15 and June 30, 2020, who timely applied for a PPP loan through various banking institutions and were processed and approved for funding.

b. An "Agent" as defined by the SBA is as follows:

    i. an attorney,

    ii. an accountant,

    iii. a consultant,

    iv. someone who prepared an applicant's application for financial assistance and is employed and compensated by applicant,

    v. someone who assists a lender with originating, disbursing, servicing liquidating, or litigating SBA loans,

    vi. a loan broker, or

    vii. any other individual or entity representing an applicant by conducting business with the SBA.

53. Plaintiffs reserve the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with Plaintiffs' motion for class certification, or any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

54. *Numerosity:* The Class is composed of thousands of Agents (the "Class Members"), whose joinder in this action would be impracticable. The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

55. *Commonality:* There is a well-defined community of interest in questions of law and fact affecting the Class. These questions of law and fact predominate over individual questions affecting individual Class Members, including, but not limited to, the following:

a. Did Defendants comply with all applicable SBA Regulations in processing Applications for PPP funds and in distributing PPP funds?

b. Did Defendants comply with their legal obligations under the terms of the

CARES Act as a lender of the PPP funds?

c.   Did Defendants have a policy and/or practice of failing to compensate Agents who facilitated PPP loans to the detriment of the Class?

d.   Did Defendants prioritize their origination fees over abiding by the CARES Act and PPP specifications?

e.   Did Defendants' conduct constitute an "unfair business practice" under California Business & Professions Code § 17200, *et seq.*?

f.   Did Defendants possess exclusive knowledge of material facts, with respect to the Application process, i.e., that the Agents were not receiving compensation when assisting applicants with PPP loan process?

g.   Did Defendants actively conceal a material fact or facts from the Plaintiffs, i.e., that the Agents were not going to receive their earned fees from assisting with the Applications?

h.   Whether Defendants' conduct, as alleged herein, was intentional and knowing?

i.   Whether Class Members are entitled to damages and/or restitution; and if so, what is the amount of revenues and/or profits Defendants received and/or was lost by Class Members as a result of the conduct alleged herein?

j.   Whether Defendants are likely to continue to mislead the public and Class Members and continue to violate SBA Regulations regarding paying Agent their earned fees under the CARES Act; and

k.   Whether Plaintiffs and Class Members are entitled to an award of reasonable attorney's fees, pre-judgment interest and costs of suit.

56.   *Superiority*: In engaging in the conduct described herein, Defendants have acted and failed to act on grounds generally applicable to Plaintiffs and other Class Members. Such conduct requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members. A class action is superior to all other available means for the fair and efficient adjudication of Plaintiffs' and the Class Members' claims. Few, if any, Class Members could afford to seek legal redress of the wrongs complained herein on an

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

individual basis. Absent class action, Class Members and the general public would not likely recover, or have the chance to recover, damages or restitution, and Defendants would be permitted to retain the proceeds of their misdeeds.

57.     *Typicality*: Plaintiffs' claims are typical of, and are not antagonistic to, the claims of all Class Members. Plaintiffs and the Class Members have all been deceived by Defendants' unfair and unlawful PPP loan application and funding practices, as alleged herein. The factual and legal bases of Defendants' liability to Plaintiffs and each Class Member as a result of Defendants' actions are described herein.

58.     *Adequacy*: Plaintiffs are adequate representatives of the Class because they are members of the Class, and Plaintiffs' interests do not conflict with the interests of the other Class Members that Plaintiffs seek to represent. Plaintiffs will fairly and adequately represent and protect the interests of the other Class Members. Plaintiffs have retained counsel with substantial experience in litigating complex cases, including consumer fraud and class actions. Both Plaintiffs and their counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiffs nor counsel have any interest adverse to other Class Members.

59.     *Ascertainability*: Plaintiffs are informed and believe that Defendants keep extensive computerized records of their loan applications through, inter alia, computerized loan application systems, and Federally mandated record keeping. Defendants have one or more databases through which a significant majority of the Class Members, if not 100% of the Class Members, may be identified and ascertained, and it maintains contact information, including email and mailing addresses, through which notice of this action could be disseminated in accordance with due processes requirements.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### On Behalf of the Class

### Against All Defendants

- 14 -

**(DECLARATORY RELIEF)**

60.     Plaintiffs hereby incorporate by reference the foregoing allegations as if fully set forth herein.

61.     Plaintiffs assert this cause of action on behalf of themselves and other Class Members as Agents as defined herein.

62.     As previously alleged, Plaintiffs assisted their clients with the application process. Defendants failed to pay Agent fees owed to Plaintiffs as required by SBA regulations and instead kept all of the origination and processing fees for themselves, in direct violation of PPP ISL.

63.     An actual controversy has arisen between Plaintiffs and Defendants as to the Agent fees owed to Plaintiffs by Defendants, and on information and belief, Defendants either deny that any Agent fees are owed to Plaintiffs, or that only a percentage of the Agent fees are owed to Plaintiffs.

64.     Plaintiffs and the Class Members seek a declaration in accordance with SBA guidance that approximately 19.14% of all administrative fees paid to all Defendants, should be deposited into a mutually agreeable fund or funds, within 60 days, to be distributed to the designee/Agent of each recipient of a PPP loan. The calculations in support of this 19.14% are shown in Attachment A.

**SECOND CAUSE OF ACTION**

**On Behalf of the Class**

**Against All Defendants**

**(Violation of the "Unfair" Prong of the UCL, California Business & Professions Code § 17200, _et seq._)**

65.     Plaintiffs hereby incorporate by reference the foregoing allegations as if fully set forth herein.

66.     Plaintiffs assert this cause of action on behalf of themselves and the other Class Members.

67.     The California Unfair Competition Law (hereinafter "UCL") defines unfair

- 15 -

1  business competition to include any "unlawful, unfair or fraudulent" act or practice.

2  68.    A business act or practice is "unfair" under the UCL if the reasons,

3  justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm

4  to the alleged victims.

5  69.    Defendants have violated the "unfair" prong of the UCL by undermining the

6  Application process and the Agent fee payment requirements.

7  70.    These acts and practices were unfair because Defendants withheld monies owed

8  to Plaintiffs that were provided for pursuant to PPP ISL. Moreover, Defendants failed to adhere

9  to SBA regulations as to PPP loans.

10  71.    The gravity of the harm to Class Members resulting from these unfair acts and

11  practices outweighed any conceivable reasons, justification, and/or motives of Defendants. By

12  committing the acts and practices alleged above, Defendants engaged in unfair business

13  practices within the meaning of California Business & Professions Code §17200, *et seq.*

14  72.    Through its unfair acts and practices, Defendants have improperly obtained

15  money from the Federal Government at the expense of Plaintiffs and the Class. As such,

16  Plaintiffs request that this Court cause Defendants to disgorge this money to Plaintiffs and all

17  Class Members, and to enjoin Defendants from continuing to violate the UCL as discussed

18  herein and/or from violating the UCL in the future. Otherwise, Plaintiffs, the Class, and

19  members of the public may be irreparably harmed and/or denied an effective and complete

20  remedy if such an order is not granted.

21  ### THIRD CAUSE OF ACTION

22  **On Behalf of the Class**

23  **Against All Defendants**

24  **(UNJUST ENRICHMENT)**

25  73.    Plaintiffs hereby incorporate by reference the foregoing allegations as if fully

26  set forth herein.

27  74.    Plaintiffs assert this cause of action on behalf of themselves and all Class

28  Members.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

75. Defendants have been, and continue to be unjustly enriched, to the detriment and at the expense of the Class Members as a result of Defendants' wrongful withholding of Agent fees owed to Plaintiffs and the Class.

76. Defendants have unjustly benefitted through the unlawful and wrongful collection of money from the Federal Government through the SBA funding PPP loan applications and continue to benefit to the detriment and at the expense of Plaintiffs and Class Members.

77. Accordingly, Defendants should not be allowed to retain the proceeds from the benefits conferred upon it by Plaintiffs. Therefore, Plaintiffs seek disgorgement of Defendants' unjustly acquired profits and other monetary benefits resulting from Defendants' unlawful conduct, and seek restitution for the benefit of the Plaintiffs and Class Members, equitably and efficiently to be determined by the Court.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs, individually and on behalf of the Class, pray for the following relief:

1. For an Order certifying the Class as defined above, appointing Plaintiffs as Class representatives for the Class, and appointing Plaintiffs' counsel as Class counsel for the Class;

2. For an Order declaring Defendants' actions to be unlawful;

3. For a declaration in accordance with SBA guidance that approximately 19.14% of all administrative fees paid to all Defendants, should be deposited into a mutually agreeable fund or funds, within 60 days, to be distributed to the designee/Agent of each recipient of a PPP loan. The calculations in support of the 19.14% are shown on Attachment A.;

4. For equitable relief to Plaintiffs and Class Members;

5. For an award of all recoverable compensatory, statutory, and other damages sustained by Plaintiffs and Class Members, including disgorgement, unjust enrichment, and all other available relief under applicable law;

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

6.  For an award of punitive damages pursuant to applicable law;

7.  For reasonably attorney's fees and expenses as permitted by applicable statutes and law, including, but not limited to, Code of Civil Procedure section 1021.5;

8.  For taxable costs;

9.  For pre and post-judgment interest as allowed by law; and

10. For any other relief the Court deems just.

DATED:  April 27, 2020

GERAGOS & GERAGOS, APC

*/s/ Mark J. Geragos*
Mark J. Geragos
Ben J. Meiselas
Matthew M. Hoesly

GRAYLAW GROUP, INC.

*/s/ Michael E. Adler*
Michael E. Adler

DHILLON LAW GROUP INC.

*/s/ Harmeet K. Dhillon*
Harmeet K. Dhillon
Nitoj P. Singh

*Attorneys for Plaintiffs and the Proposed Class*

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial of its claims by jury to the extent authorized by law.


DATED:  April 27, 2020            **GERAGOS & GERAGOS, APC**

                                  */s/ Mark J. Geragos*
                                  Mark J. Geragos
                                  Ben J. Meiselas
                                  Matthew M. Hoesly

                                  **GRAYLAW GROUP, INC.**

                                  */s/ Michael E. Adler*
                                  Michael E. Adler


                                  **DHILLON LAW GROUP INC.**

                                  */s/ Harmeet K. Dhillon*
                                  Harmeet K. Dhillon
                                  Nitoj P. Singh

                                  *Attorneys for Plaintiffs and the*
                                  *Proposed Class*

# Attachment "A"

### ATTACHMENT A
### CARES Act PPP Funded Loans Through April 16, 2020*

| Loan Size | Approved PPP Loans through April 16, 2020* | SBA Funded Amount | % of Loans | % of Amount |
|---|---|---|---|---|
| $150K and Under | 1,229,893 | $ 58,321,791,761 | 74.0% | 17.0% |
| >$150K-$350K | 224,061 | $ 50,926,354,675 | 13.5% | 14.9% |
| >$350K-$1M | 140,197 | $ 80,628,410,796 | 8.4% | 23.6% |
| >$1M-$2M | 41,238 | $ 57,187,983,464 | 2.5% | 16.7% |
| >$2M-$5M | 21,566 | $ 64,315,474,825 | 1.3% | 18.8% |
| >$5M | 4,412 | $ 30,897,983,582 | 0.3% | 9.0% |
| | 1,661,367 | $ 342,277,999,103 | 100.0% | 100.0% |

| Loan Size | Mandated Lender Percentage | SBA Funded Amount | Mandated Lender Fee |
|---|---|---|---|
| $150K and Under | 5.00% | $ 58,321,791,761 | $ 2,916,089,588 |
| >$150K-$350K | 5.00% | $ 50,926,354,675 | $ 2,546,317,734 |
| >$350K-$1M | 3.00% | $ 80,628,410,796 | $ 2,418,852,324 |
| >$1M-$2M | 3.00% | $ 57,187,983,464 | $ 1,715,639,504 |
| >$2M-$5M | 1.00% | $ 64,315,474,825 | $ 643,154,748 |
| >$5M | 1.00% | $ 30,897,983,582 | $ 308,979,836 |
| | | $ 342,277,999,103 | $ 10,549,033,734 |

| Average Lender Percentage | 3.08% |
|---|---|

| Loan Size | Mandated Agent Percentage | SBA Funded Amount | Mandated Agent Fee |
|---|---|---|---|
| $150K and Under | 1.00% | $ 58,321,791,761 | $ 583,217,918 |
| >$150K-$350K | 1.00% | $ 50,926,354,675 | $ 509,263,547 |
| >$350K-$1M | 0.50% | $ 80,628,410,796 | $ 403,142,054 |
| >$1M-$2M | 0.50% | $ 57,187,983,464 | $ 285,939,917 |
| >$2M-$5M | 0.25% | $ 64,315,474,825 | $ 160,788,687 |
| >$5M | 0.25% | $ 30,897,983,582 | $ 77,244,959 |
| | | $ 342,277,999,103 | $ 2,019,597,082 |

| Average Agent Percentage | 0.59% |
|---|---|

\* https://home.treasury.gov/system/files/136/SBA PPP Loan Report Deck.pdf

### Paycheck Protection Program and Health Care Enhancement Act ("PPPEA")**

| Supplemental PPPEA Funding signed into law April 24, 2020 | Average Mandated Agent Percentage from Original PPP Funding | Extrapolated Mandated Agent Fees from Supplemental PPPEA Funding | Maximum Agent Fees owed to Class based on Original PPP and PPPEA Funding |
|---|---|---|---|
| $310,000,000,000 | 0.59% | $1,829,000,000 | $3,848,597,082 |

| Supplemental PPPEA Funding signed by President Trump on April 24, 2020 | Average Mandated Lender Percentage from Original PPP Funding | Extrapolated Mandated Lender Fees from Supplemental PPPEA Funding | Approximate Lender Fees based on Original PPP and PPPEA Funding |
|---|---|---|---|
| $310,000,000,000 | 3.08% | $9,554,223,368 | $20,103,257,102 |

| Average Agent Percentage divided by Average Lender Percentage | 19.14% |
|---|---|

\*\* https://www.congress.gov/bill/116th-congress/house-bill/266/text