O

# United States District Court
# Central District of California

| | |
|---|---|
| AMERICAN VIDEO DUPLICATING INC. et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITIGROUP INC. et al., <br><br> Defendants. | Case № 2:20-CV-03815-ODW (AGRx) <br><br> **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [83] [117]** |

## I.   INTRODUCTION

Before the Court are (1) Defendant Citibank, N.A.'s ("Citibank") Motion to Dismiss ("Citibank's Motion") the First Amended Complaint ("FAC"), and (2) a joint Motion to Dismiss the FAC ("Joint Motion") filed by Defendants U.S. Bank National Association; JPMorgan Chase Bank, N.A.; Wells Fargo Bank, N.A.; Bank of America, N.A.; Live Oak Banking Company; and Harvest Small Business Finance (collectively, "Defendants").[1]  (Citibank's Mot., ECF No. 83; Joint Mot., ECF No. 117.)  For the following reasons, the Court **GRANTS** Defendants' motions to dismiss the FAC **with leave to amend**.[2]

---

[1] For purposes of this Order, references to "Defendants" include Citibank unless otherwise noted.

[2] After carefully considering the papers filed in connection with both Motions, the Court deemed the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

Plaintiffs American Video Duplicating, Inc. ("AVD"), Tush Law, Ltd. ("TLL"), and Kenneth M. Hahn dba Cal State Financial ("CSF") (collectively, "Plaintiffs") provide consulting, legal, accounting and tax preparation services. (FAC ¶¶ 1–3, ECF No. 80.) They bring this action on behalf of themselves and a putative class, seeking "agent fees" from lenders under the Payment Protection Program ("PPP"), which was established by the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, § 1102, 134 Stat. 281, 286–294 (Mar. 27, 2020). (*See generally* FAC.)

Plaintiffs allege they assisted clients in securing PPP loans from Defendants, and Defendants were therefore required to pay Plaintiffs "agent fees" under the PPP. (*Id.* ¶¶ 45–51.) Upon information and belief, Plaintiffs allege Defendants received lender fees from the federal government and funded PPP loans for borrowers, some of whom Plaintiffs represented, yet Defendants failed and refused to pay Plaintiffs any agent fees. (*Id.* ¶¶ 43–44.) Plaintiffs claim that Defendants' refusals to pay agent fees constitute "unlawful actions" from which Plaintiffs suffered financial harm. (*Id.* ¶¶ 53–54.) Based only on these general allegations, Plaintiffs assert three causes of action against Defendants for: (1) declaratory relief; (2) violation of California Business and Professions Code section 17200; and (3) unjust enrichment. (*See id.* ¶¶ 66–96.)

## III. REQUESTS FOR JUDICIAL NOTICE

Both parties request the Court take judicial notice of various documents that are publicly available on official government websites. (Plaintiffs' RJN, ECF No. 124; Defendants' RJN, ECF No. 117-3.) Both requests stand unopposed. The Court may take judicial notice of "matters of public record" that are not "subject to reasonable dispute." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *accord Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly

available by government entities . . . and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein."); *United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) ("Judicial notice is appropriate for records and 'reports of administrative bodies.'"). Thus, both Plaintiffs' and Defendants' requests are **GRANTED** to the extent that the Court relies on the submitted documents.

## IV. LEGAL STANDARDS

Federal Rule of Civil Procedure ("Rule") 12(b)(1) provides for dismissal of a complaint for lack of subject matter jurisdiction. The Article III case or controversy requirement limits a federal court's subject matter jurisdiction, which includes the requirement that plaintiffs have standing to bring their claims. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010). Rule 12(b)(1) jurisdictional attacks can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). When a motion to dismiss attacks subject matter jurisdiction on the face of the complaint, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). Moreover, the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), apply with equal force to Article III standing when it is being challenged on the face of the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012). Thus, in terms of Article III standing, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

A court may also dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of

the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, again, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee*, 250 F.3d at 679. However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City and Cty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## V. DISCUSSION

Defendants move to dismiss Plaintiffs' FAC under Rule 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a claim. (Citibank's Mot. 7; Joint Mot. 1.) The Court addresses each ground in turn.

### A. Article III Standing

First, whether Plaintiffs have standing to bring their claims is a threshold matter. "[T]he irreducible constitutional minimum of standing" consists of three elements: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The injury-in-fact element requires a plaintiff to show "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, *as revised* (May 24, 2016) (quoting *Lujan*, 504 U.S. at 560). And the alleged injury must be "fairly traceable to the challenged conduct of the defendant." *Id.* at 1547. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

Defendants insist Plaintiffs lack standing because Plaintiffs' conclusory allegations fail to allege an injury-in-fact traceable to any Defendant's alleged conduct, and "Plaintiffs fail to identify even a *single PPP loan application* with which they assisted and that was submitted to and approved by any of the Defendants." (Joint Mot. 8–9; *see* Citibank's Mot. 8–9.)[3]

Plaintiffs appear to acknowledge the FAC does not identify a PPP loan applicant or application for which any specific Defendant failed to pay agent fees, but they contend nonetheless that (1) the FAC adequately sets out the role each Defendant played in the alleged general harm; and (2) Plaintiffs provided more specific allegations after filing the FAC, as reflected in a Declaration by TLL's CEO filed concurrently with Plaintiffs' Opposition to Citibank's Motion. (Opp'n to Citibank's

---

[3] Beyond Defendants' collective argument, Citibank further contends that Plaintiffs' claims are not ripe because, without identifying any instance in which an alleged injury occurred, the claims are prospective at best. (Citibank's Mot. 10–11.) However, as the Court finds Plaintiffs fail to allege an injury-in-fact fairly traceable to any single Defendant's conduct, it need not consider whether Plaintiffs' claims are ripe and declines to do so.

Mot. 5–7, ECF No. 95 ("While the Complaint standing alone is sufficient to establish standing . . . Plaintiffs offered to provide Citi[bank] with the very information it claims is missing from the Complaint." (citations omitted)); *see also* Opp'n to Joint Mot. 5–6, ECF No. 122;[4] Decl. of Alan S. Turlington, ("TLL Decl."), ECF No. 95-2.) Plaintiffs thus contend they have established standing "both through the allegations in the Complaint and the information Plaintiffs subsequently offered to provide to Citi." (Opp'n to Citibank's Mot. 6.)

What matters here, however, is that the allegations in the FAC are too conclusory to say Plaintiffs' alleged injuries are "fairly traceable to the challenged conduct" of any given Defendant. *See Spokeo*, 136 S. Ct. at 1547. The FAC does not inform any Defendant of its particular role in the alleged general harm; it relies merely on generalized, conclusory allegations. Plaintiffs improperly try to retroactively bolster their allegations with more specific claims in their Oppositions and accompanying TLL Declaration. Indeed, such specific allegations would have perhaps helped demonstrate a concrete and particularized injury-in-fact traceable to Citibank. But those allegations are not in the FAC.[5]

Because Plaintiffs fail to clearly allege facts sufficient to establish Article III standing, the Court lacks jurisdiction over this action. *See Chandler*, 598 F.3d at 1121–22. Therefore, both motions to dismiss the FAC are **GRANTED** to the extent they rely on Rule 12(b)(1).

### B. Failure to State a Claim

Even assuming, for argument's sake, that Plaintiffs adequately establish standing, the FAC must be dismissed under Rule 12(b)(6). As discussed below, Defendants correctly argue that Plaintiffs' claims fail as a matter of law because,

---

[4] Plaintiffs do not raise any standing-related arguments in their Opposition to the Joint Motion that were not raised in the Opposition to Citibank's Motion. (Opp'n to Joint Mot. 5–6 ("As to standing, Defendants' [Joint] Motion to Dismiss directly tracks co-Defendant Citi[bank]'s Motion to Dismiss. For purposes of brevity, Plaintiffs incorporate by reference their Opposition to Citi[bank]'s Motion to Dismiss . . . as if fully set forth herein.").)

[5] Moreover, the subsequently provided specific facts pertain only to Citibank, not all Defendants.

among other reasons, the CARES Act does not create an entitlement or private right of action to collect agent fees. (*See* Citibank's Mot. 12–19; Joint Mot. 9–23.)

It must be noted at the outset of this analysis that the parties' dispute turns on interpretation of an interim final rule by the Small Business Administration ("SBA"), issued to provide guidance on the administration of PPP loans. *See* Interim Final Rule ("IFR"), 85 Fed. Reg. 20,811, 20,816 (April 15, 2020). The IFR explains that the PPP was temporarily added to the SBA's Section 7(a) Loan Program, and it states, "The program requirements of the PPP identified in this [IFR] temporarily supersede any *conflicting* Loan Program Requirement . . . ." *Id.* (emphasis added).

Under the existing Section 7(a) Loan Program, parties must agree to agent fees using a "Fee Disclosure and Compensation Agreement," otherwise known as a "Form 159." *See* 13 C.F.R. § 103.5(a) ("Any Applicant, Agent, or Packager must execute and provide to SBA a compensation agreement . . . . SBA provides the form of compensation agreement . . . to be used by Agents."); *see also* SBA Form 159 (rev. Apr. 9, 2018).[6]

The IFR does not mention Form 159, but it does answer the question, "Who pays the fee to an agent who assists a borrower?" as follows:

> Agent fees will be paid by the lender out of the fees the lender receives from SBA. Agents may not collect fees from the borrower or be paid out of the PPP loan proceeds. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan (including referral to the lender) may not exceed:
>
> i. One (1) percent for loans of not more than $350,000;
> ii. 0.50 percent for loans of more than $350,000 and less than $2 million; and
> iii. 0.25 percent for loans of at least $2 million.

IFR, 85 Fed. Reg. at 20,816.

---

[6] SBA Form 159 is available online at https://www.sba.gov/document/sba-form-159-fee-disclosure-compensation-agreement.

From this language arises the central issue in this case: whether the IFR calls for payment of agent fees on *all* PPP loans, thereby superseding the existing Section 7(a) requirement that agent fees be designated in a Form 159. This precise question has sparked over fifty similar lawsuits across the country with plaintiffs alleging unpaid agent fees under the PPP. *See In re Paycheck Prot. Program Agent Fees Litig.*, No. MDL 2950, 2020 WL 4673430, at *3 (J.P.M.L. Aug. 5, 2020) (declining to consolidate the present action with others but acknowledging the common legal question).

It appears every court that has decided this issue has held that the CARES Act does not require lenders to pay agent fees absent an agreement to do so, nor does it create a corresponding private right of action. *See, e.g.*, *Sanchez, PC v. Bank of S. Tex.*, No. CV-20-00139, 2020 WL 6060868, at *7 (S.D. Tex. Oct. 14, 2020) ("The Court joins the preexisting consensus that 'there is no private cause of action to enforce this [agent fee] provision of the CARES Act.'" (alteration in original) (quoting *Johnson v. JPMorgan Chase Bank, N.A.*, No. CV-20-4100 (JSRx), 2020 WL 5608683, at *8 (S.D.N.Y. Sept. 21, 2020)); *Sport & Wheat, CPA, PA v. ServisFirst Bank, Inc.*, No. 3:20-cv-05425-TKW-HTC, 2020 WL 4882416, at *3 (N.D. Fla. Aug. 17, 2020) ("The CARES Act does not require lenders to pay the agent's fees absent an agreement to do so . . . ."). The Court sees no reason to depart from these conclusions.

Plaintiffs insist the traditional Form 159 requirement is inapplicable here because it conflicts with the PPP loan program requirements. (Opp'n to Citibank's Mot. 14–16; Opp'n to Joint Mot. 2.) Their primary argument is that the PPP borrower application form (SBA Form 2483)[7] omits what is normally "Question 10" on a Section 7(a) loan application form (SBA Form 1919),[8] which asks whether an agent assisted with preparing the loan application. (*See* Opp'n to Citibank's Mot. 15–16; *id.*

---

[7] SBA Form 2483 is available online at https://www.sba.gov/document/sba-form-2483-paycheck-protection-program-borrower-application-form.

[8] SBA Form 1919 is available online at https://www.sba.gov/document/sba-form-1919-borrower-information-form.

App'x A ("First Comp. Chart") R15, ECF No. 95-1; Opp'n to Joint Mot. App'x A ("Second Comp. Chart") R16, ECF No. 122-1.)

But this argument misses the mark. The question before the Court is *whether the IFR conflicts with the Section 7(a) requirement that a Form 159 must be executed and submitted to the SBA*, not whether the application form for a PPP loan appears different than the application form for a standard Section 7(a) loan. *See generally Sanchez*, 2020 WL 6060868, at *8 ("The question is whether the PPP supersedes 13 C.F.R. § 103.5(a), not the form compensation agreement promulgated under that regulation."). Moreover, the PPP *borrower* application Form 2483, which is submitted to the lender, need not inquire about an agent because under the PPP, "the *lender* is the party that will have agreed to compensate that third party." (Joint Mot. 14.) "By contrast, the Lender Application Form (SBA Form 2484), which a lender must complete for each approved loan submitted to the SBA, specifically asks whether a third party was used to assist in the preparation of the loan application."[9] (*Id.* at 13–14 (internal quotation marks omitted).) Indeed, the fact that the PPP *lender* application form asks whether the lender used an agent to assist with the application—in a system where agent fees can only be recovered from lenders, not borrowers—shows that the SBA contemplated certain PPP loans would *not* involve agent fees.

Pressing onward, Plaintiffs argue that Form 159 is not required for a PPP loan because it is "only used if the borrower or lender pays the agent fees, which is not the case here where the SBA is paying it." (Opp'n to Citibank's Mot. 16.) Plaintiffs further note, "Even if it were determined that the Agent is not being paid by the SBA but is being paid by the SBA Lender, Plaintiffs are not required to sign or submit Form 159. The Lender is responsible for completing Form 159 when it pays an Agent." (Opp'n to Citibank's Mot. at 16 n.9.) To start, these arguments are unpersuasive because the IFR clearly instructs that "[a]gent fees will be paid by the

---

[9] SBA Form 2484 is available online at https://www.sba.gov/document/sba-form-2484-lender-application-form-paycheck-protection-program-loan-guaranty.

*lender.*"  IFR, 85 Fed. Reg. at 20,816 (emphasis added).  Moreover, Plaintiffs appear to admit that a lender *must still submit Form 159* if agent fees under the PPP are to be paid by the lender.  (*See* Opp'n to Citibank's Mot. at 16 n.9; First Comp. Chart R8, R15; Second Comp. Chart R8, R16.)  Tellingly, Plaintiffs' argument loses sight of the relevant question here, which is whether a Form 159 must be submitted at all.

Beyond this, Plaintiffs advance arguments that merely invite the Court to rule in their favor based on conjecture, as none of the purported conflicts are evident on the face of the IFR.  For instance, Plaintiffs contend the SBA obviated the need to use Form 159 when it deemed 0.25% to 1% agent fees as reasonable under the PPP.  (*See* Opp'n to Citibank's Mot. 15–16; First Comp. Chart R15; Second Comp. Chart R16.)  But accepting this argument would require the Court to assume, among other things, that the SBA does not care what agent fees are paid in connection with any PPP loan as long as the fee falls within the range limits—a proposition for which Plaintiffs provide no support.

In short, the Court agrees with other district courts that have already decided that:

> Form 159 does not conflict with the IFR because . . . there is nothing in the IFR that prohibits the SBA Administrator from requiring use of the form (or the disclosure of agent fees) and the form clearly states that it is to be used "whenever an Agent is paid by either the [borrower] <u>or</u> the SBA Lender in connection with the SBA loan application."

*Sport & Wheat*, 2020 WL 4882416, at *3–4 (quoting IFR, 85 Fed. Reg. at 20,816).  "[A]gents must simply comply with 13 C.F.R. § 103.5(a) in executing and delivering a compensation agreement, in addition to all other applicable requirements."  *Sanchez*, 2020 WL 6060868, at *9.

Having concluded there is no private cause of action to retrieve agent fees under the PPP absent an agreement between agent and lender, the Court briefly turns to Plaintiffs' individual claims.  First, Plaintiffs' declaratory judgment claim fails because it is premised on the alleged mandatory agent fees discussed above, which are not

automatically mandated under the PPP. *See Saterbak v. Nat'l Default Servicing Corp.*, No. 3:15-cv-00956-WQH-BGS, 2016 WL 4430922, at *15 (S.D. Cal. Aug. 22, 2016) ("A claim for declaratory relief is not a stand-alone claim."). Second, absent allegations that Plaintiffs entered into agreements with Defendants to receive agent fees, Plaintiffs' UCL claim is dependent on a private cause of action in the PPP which does not exist. *See Stokes v. CitiMortgage, Inc.*, No. CV 14-00278 BRO (SHx), 2014 WL 4359193, at *11 (C.D. Cal. Sept. 3, 2014) (a UCL claim "must be 'tethered' to specific constitutional, statutory, or regulatory provisions."); *accord Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018).

Finally, under California law, unjust enrichment is neither a standalone cause of action nor a remedy, but rather a "general principle, underlying various legal doctrines and remedies" synonymous with restitution. *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014); *see also Lil' Man In the Boat, Inc. v. City & Cnty. of San Francisco*, No. 17-cv-00904-JST, 2018 WL 4207260, at *4 ("When a plaintiff lacks a private right of action under a particular statute, she cannot argue around that limitation by bootstrapping her cause of action onto an unjust enrichment claim or declaratory relief claim based on the same statute."). Just as Plaintiffs' declaratory judgment claim must be dismissed for lack of an underlying substantive claim, so too must their claim for unjust enrichment.

For these reasons, Defendants' motions to dismiss the FAC are also **GRANTED** to the extent they rely on Rule 12(b)(6).

## VI. CONCLUSION

In summary, the Court **GRANTS** Citibank's Motion and the Joint Motion to Dismiss Plaintiffs' FAC. (ECF Nos. 83, 117). Because the CARES Act does not provide a private cause of action to recover agent fees absent an agreement between agent and lender, it appears unlikely that Plaintiffs can overcome the deficiencies identified above. However, because Plaintiffs could conceivably allege more facts to support a proper claim for agent fees, the Court cannot say any amendment would be

futile.  Thus, the Court **GRANTS** Plaintiffs **LEAVE TO AMEND** by filing a Second Amended Complaint, rectifying the deficiencies identified above, no later than twenty-one (21) days from the date of this Order.  Failure to timely amend will result in dismissal with prejudice and closing of the case.

**IT IS SO ORDERED.**

November 16, 2020

  _____
             **OTIS D. WRIGHT, II
        UNITED STATES DISTRICT JUDGE**

12