**GRAYLAW GROUP, INC.**
26500 Agoura Road, #102-127
Calabasas, CA 91302
Telephone: (818) 532-2833
Facsimile: (818) 532-2834
MICHAEL E. ADLER          SBN 236115
meadler@graylawinc.com

**DHILLON LAW GROUP INC.**
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593
HARMEET K. DHILLON          SBN: 207873
harmeet@dhillonlaw.com
NITOJ P. SINGH          SBN: 265005
nsingh@dhillonlaw.com

**GERAGOS & GERAGOS, PC**
644 South Figueroa Street
Los Angeles, California 90017-3411
Telephone: (213) 625-3900
Facsimile: (213) 232-3255
MARK J. GERAGOS          SBN 108325
mark@geragos.com
BEN J. MEISELAS          SBN 277412
ben@geragos.com
MATTHEW M. HOESLY          SBN 289593
mhoesly@geragos.com

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN VIDEO DUPLICATING, INC., a California corporation; TUSH LAW LTD., a California limited partnership, and KENNETH M. HAHN, a sole proprietor, DBA CAL STATE FINANCIAL, individually and on behalf | Case No. 2:20-cv-03815-ODW-AGR **SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES** |

1

of a class of similarly situated businesses and individuals,

                                        Plaintiffs,

        vs.

CITIBANK, N.A.; U.S. BANK, N.A.; JPMORGAN CHASE BANK, N.A.; WELLS FARGO BANK, N.A.; BANK OF AMERICA N.A.; LIVE OAK BANKING COMPANY; HARVEST SMALL BUSINESS FINANCE,
                                        Defendants.

Plaintiffs American Video Duplicating, Inc., Tush Law, Ltd., and Kenneth M. Hahn, a sole proprietor, dba Cal State Financial, bring this second amended class action complaint on behalf of themselves and those similarly situated (hereinafter "Plaintiffs") against Defendants Citibank N.A., U.S. Bank N.A., JPMorgan Chase Bank, N.A., Wells Fargo Bank, N.A.; Bank of America N.A.; Live Oak Banking Company; and Harvest Small Business Finance (collectively, "Defendants" or "Lenders"), to obtain fees owed to Plaintiffs as a result of their work as agents ("Agents" or "PPP Agents" or "Borrower Agents") who assisted small- and medium-sized business borrowers ("Borrowers" or "Applicants") in obtaining federally-guaranteed loans through the Paycheck Protection Program ("PPP"), a federal bail-out program implemented to provide businesses with loans to combat the economic impact of COVID-19.

The Agents were not retained by Defendants, but directly by the Borrowers, to serve as their independent representatives to assist in the process of preparing their PPP loan applications (the "Applications"). Federal regulations **require** Defendants to complete, sign, and submit to the Small Business Administration

("SBA") the proper SBA forms to pay Plaintiffs and the proposed Class for their work as the Borrowers' Agents under the PPP in the form of agent fees (the "Agent Fees"). The Lender has no right under the regulations to reject the involvement or role of the Borrower Agents in the PPP process. Despite precise regulatory requirements providing that the Agent Fees are owed to Plaintiffs, Defendants have failed to pay Plaintiffs and the Class Members and intentionally interfered with the Plaintiffs' ability to collect the Agent Fees. Instead, Defendants have kept the Agent Fees for themselves. Plaintiffs allege the following based upon their knowledge and upon information and belief, including investigations conducted by their attorneys.

# I.  PARTIES

1.      Plaintiff, American Video Duplicating, Inc. ("AVD") is a California corporation organized and authorized to do business and doing business in the State of California. Among providing other services, AVD is a business consulting firm in good standing with the State of California. President, David M. Wohl ("Wohl"), has been a business consultant since 1996. In the 1980s, Wohl passed all four parts of the CPA Exam. Wohl has been licensed as a CPA since December 2010. AVD is located in Valley Village, California. Although AVD assisted its clients with preparing their application(s) for a PPP loan from the Defendants, Defendants have failed to pay AVD the agent fees Defendants owe AVD for AVD's work in securing the PPP loans. AVD fully complied with all applicable PPP regulations required to earn AVD its Agent Fee.

2.      Plaintiff, Tush Law Ltd., ("TLL") is a California limited partnership authorized to do business and doing business in the State of California. TLL is a law firm in good standing with the State of California. President, Alan S. Turlington ("Turlington") received his JD from Georgetown

University Law Center and became a licensed California attorney on December 3, 2013. Turlington founded TLL on January 3, 2018. TLL is located in Santa Ana, California. Although TLL assisted its clients with preparing their application(s) for a PPP loan from the Defendants, Defendants have failed to pay TLL the agent fees Defendants owe TLL for TLL's work in securing the PPP loans. TLL fully complied with all applicable PPP regulations required to earn TLL its Agent Fee.

3.     Plaintiff, Kenneth M. Hahn, DBA Cal State Financial ("CSF"), is a sole proprietorship organized and authorized to do business and doing business in the State of California. CSF has been in business for approximately twenty-nine (29) years, and Hahn has been a Registered Tax Preparer in good standing with the State of California for seven (7) years. CSF is located in Torrance, California. Although CSF assisted its clients with preparing their application(s) for a PPP loan from the Defendants, Defendants have failed to pay CSF the agent fees Defendants owe CSF for CSF's work in securing the PPP loans. CSF fully complied with all applicable PPP regulations required to earn CSF its Agent Fee.

## DEFENDANTS, THE SERIES OF PPP TRANSACTIONS AND/OR OCCURRENCES, AND THE COMMON QUESTIONS OF LAW

4.     As recently observed by the United States Judicial Panel on Multidistrict Litigation (JPML) concerning this action and similar actions around the country, the case against the defendants "….allege similar policies and practices by the defendant banks – specifically, that defendants failed to pay fees to agents who assisted small businesses in applying for and obtaining PPP loans, contrary to the provisions of the CARES Act and federal regulation." (See Order Denying Transfer at 1, IN RE: Paycheck Protection Program (PPP) Agent Fees Litigation, MDL 2950, ECF No. 365.)

5.     Each claim against each Defendant involves a single loan product (PPP loans) that was created under a single Congressional act (the Coronavirus

Aid, Relief, and Economic Security Act (CARES) Act (P.L. 116-136) ("CARES Act"), administered by a single government agency, the SBA, and is governed by the SBA Regulations (as defined below).

6.    Plaintiffs served as the Borrowers' Agent for PPP loan Borrowers and allege entitlement of mandatory Agent Fees to which Plaintiffs are entitled as a result of the assistance provided to Borrowers in preparing their Applications that were submitted to a given Defendant – and ultimately funded by that Defendant – under and pursuant to the CARES Act and SBA Regulations.

7.    In addition, almost all the facts at issue here are common to Defendants. That is because there is a single loan product at issue here—the federally funded PPP loan—not multiple proprietary loan products created by different defendants. To participate as PPP Lenders, "Lenders **must** comply with the applicable lender obligations set forth in [the SBA Regulations]."[1]

8.    As alleged, all Defendants treated the program the same way: Defendants were paid millions of dollars in PPP lender fees ("Lender Fees") by the federal government, or in the case of Chase, BofA, Wells, and Citibank, hundreds of millions of dollars in Lender Fees.

9.    Each Defendant has refused to recognize the statutory role and participation of the Borrower Agents in the PPP and refused to pay them the required Agent Fees out of the PPP Lender Fees received.

10.    The common practice addressed here is Defendants' willing participation in the PPP and receipt of federal funds in the form of the PPP Lender Fees and subsequent failure to remit to the Class the Agent Fees as required by the SBA Regulations.

11.    Fundamentally, there is a common core legal issue present against all Defendants: Whether Agents who assisted Borrowers in applying for PPP loans are entitled to the statutory Agent Fees the federal government entrusted to

---

[1] 85 FR 20812 (1) (emphasis added).

Defendants for the benefit of Agents, such as Plaintiffs and the proposed Class Members (as defined below).

## INDIVIDUAL DEFENDANTS' ALLEGATIONS

12.     Defendant Citibank, N.A. ("Citibank"), is a national bank. Its principal place of business is Sioux Falls, South Dakota. Citibank conducts substantial business in this District. TLL and CSF acted in the statutorily defined role of the Borrower's Agent in securing PPP loans for two Applicants of Citibank in an amount of $75,000. Applicants' PPP loans were funded by Citibank. Based on information and belief, Citibank has taken custody of the money owed to Plaintiffs from the Federal Government, yet, prior to filing this suit, when Citibank was sent several emails requesting payment of the Agent Fee, Citibank failed to respond. Having taken custody from the SBA of the approximately $739.00 in Agent Fees owed to Plaintiffs, Citibank has failed to comply with the SBA Regulations and submit to the SBA Form 159, thereby allowing Defendant to pay Plaintiffs the statutorily-required fees that Plaintiffs are owed.

13.     Defendant U.S. Bank National Association ("U.S. Bank") is a national bank. Its principal place of business is Cincinnati, Ohio. U.S. Bank conducts substantial business in this District. AVD acted in the statutorily defined role of the Borrower's Agent in securing a PPP loan for one Applicant of U.S. Bank in an amount of $45,000. Applicant's PPP loan was funded by U.S. Bank. Based on information and belief, U.S. Bank has taken custody of the money owed to Plaintiff from the Federal Government, yet, prior to filing this suit, when U.S. Bank was sent an email requesting payment of the Agent Fee, Defendant responded that they were not paying Borrowers' Agents Agent Fees. Additionally, U.S. Bank's online application system did not allow the Borrower or Agent to submit any information identifying the Agent. Having taken custody from the SBA of the $447.00 in Agent Fees owed to AVD, U.S. Bank has failed to comply with the SBA Regulations and submit to the SBA Form 159, thereby allowing Defendant

to pay Plaintiff the statutorily-required fees that Plaintiff is owed.

14.     Defendant JPMorgan Chase Bank, N.A. ("Chase"), is a national bank. Its principal place of business is New York, New York. Chase conducts substantial business in this District. CSF acted in the statutorily defined role of the Borrower's Agent in securing PPP loans for five Applicants of Chase in an amount of approximately $1,132,000. These Borrowers' PPP loans were funded, and Chase has been paid its Lender Fees by the federal government under the PPP, which by definition, includes the $5,880.00 owed to CSF. Prior to the filing of this suit, Chase took the public position that it is not paying Agent Fees, and its online application system did not allow the Borrower or Agent to submit any information identifying the Agent. Having taken custody from the SBA of the Agent Fees owed to Plaintiffs, Chase has failed to comply with the SBA Regulations and submit to the SBA Form 159, thereby allowing Defendant to pay Plaintiffs the statutorily-required fees that Plaintiffs are owed.

15.     Defendant Wells Fargo Bank, N.A. ("Wells"), is a national bank. Its principal place of business is Sioux Falls, South Dakota. Wells conducts substantial business in this District. CSF acted in the statutorily defined role of the Borrower's Agent in securing a PPP loan for one Applicant of Wells in an amount of approximately $50,500. This Borrower's PPP loan was funded, and Wells has been paid its Lender Fees by the federal government under the PPP, which by definition, includes Plaintiff's. Prior to the filing of this suit, Wells took the public position that it is not paying Agent Fees, and its online application system did not allow the Borrower or Agent to submit any information identifying the Agent. Having taken custody from the SBA of the $502.00 in Agent Fees owed to CSF, Wells has failed to comply with the SBA Regulations and submit to the SBA Form 159, thereby allowing Defendant to pay Plaintiff the statutorily-required fees that Plaintiff is owed. Instead, almost three months after the first of the PPP lawsuits for non-payment of Agent Fees was filed, "Wells Fargo says it collected $400 million in

processing fees for making Paycheck Protection Program loans. Now the San Francisco-based bank has pledged to donate all those fees to nonprofit organizations that are trying to help small businesses recover from the coronavirus pandemic."[2]

16.     Defendant Bank of America, N.A. ("BofA"), is a national bank. Its principal place of business is Charlotte, North Carolina. BofA conducts substantial business in this District. CSF acted in the statutorily defined role of the Borrowers' Agent in securing PPP loans for four Borrowers of BofA in an amount of approximately $50,000. These Borrowers' PPP loans were funded, and BofA has been paid its Lender Fees by the federal government under the PPP, which by definition, includes Plaintiffs. Prior to the filing of this suit, BofA posted on its website, "In the absence of a pre-loan approval written agreement between the agent and Bank of America, Bank of America does not pay fees or other compensation to agents who represent or assist borrowers in applying for loans through the Paycheck Protection Program." BofA's online application system did not allow the Borrower or Agent to submit any information identifying the Agent. Having taken custody from the SBA of the $482.00 in Agent Fees owed to CSF, BofA has failed to comply with the SBA Regulations and submit Form 159, thereby allowing Defendant to pay Plaintiffs the statutorily-required fees that Plaintiffs are owed.

17.     Upon information and belief, at all relevant times, Defendant Live Oak Banking Company ("Live Oak") is a subsidiary of Live Oak Bancshares, Inc. Live Oak specializes in originating business loans that are guaranteed by the SBA. Live Oak is headquartered in Wilmington, North Carolina, and conducts substantial business within the State of California. CSF acted in the

---

[2] https://www.americanbanker.com/news/heres-where-wells-fargo-is-donating-its-400m-in-ppp-fees#:~:text=Wells%20Fargo%20says%20it%20collected,recover%20from%20the%20coronavirus%20pandemic.

statutorily defined role of the Borrower's Agent in securing a PPP loan for one Applicant of Live Oak in an amount of approximately $20,833. Having taken custody from the SBA of the $208.33 in Agent Fees owed to CSF, Live Oak has failed to comply with the SBA Regulations and submit Form 159, thereby allowing Defendant to pay Plaintiffs the statutorily-required fees that Plaintiffs are owed. When Live Oak was sent an email requesting payment of the Agent Fee, Defendant responded that they were not paying Borrowers' Agents any fees.

18.     Upon information and belief, at all relevant times, Defendant, Harvest Small Business Finance ("Harvest") is a limited liability company organized and authorized to do business and doing business in the State of California. Harvest is a non-bank lender with the specific goal of serving small business borrowers and is located in Laguna Hills, California. AVD acted in the statutorily defined role of the Borrower's Agent in securing PPP loans for five Applicants of Harvest in an amount of approximately $1,800,000. Having taken custody from the SBA of the $6,397.00 in Agent Fees still owed to AVD, Harvest has failed to comply with the SBA Regulations and to pay Plaintiffs the statutorily-required fees that Plaintiffs are owed. When Harvest was contacted for payment of the Agent Fees, Harvest responded that they are only paying 50% of the statutory fee.

## II. JURISDICTION AND VENUE

19.     The Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. §1332(d), because this is a class action in which (1) at least some members of the proposed Class have different citizenship from Defendant(s); (2) the proposed Class consists of more than 100 persons or entities; and (3) the claims of the proposed members of the Class exceed $5,000,000 in the aggregate.

20.     This Court has personal jurisdiction over Defendants because Defendants do business in this District, and a substantial number of the events giving rise to the claims alleged herein took place in this District.

21.     The venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiffs' principal place of business are located in this District, and a substantial part of the events or omissions giving rise to the alleged claims occurred in this District. Plaintiffs, on behalf of its clients, applied for the PPP loans while in this District and Defendants marketed, promoted, and took Applications for the PPP loans in this District.

## III.   **FACTUAL ALLEGATIONS**
### *BACKGROUND*

22.     On January 21, 2020, the Center for Disease Control and Prevention ("CDC") confirmed the first U.S. case of a new coronavirus, known as COVID-19.

23.     On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak to be a "public health emergency of international concern."

24.     On March 4, 2020, California Governor Gavin Newsom proclaimed a State of Emergency to exist in California as a result of the threat of COVID-19.

25.     On March 11, 2020, the WHO declared that the spread of COVID-19 had become a pandemic.

26.     On March 13, 2020, President Trump issued the Coronavirus Disease 2019 (COVID-19) Emergency Declaration applicable to the United States, which declared that the pandemic was of "sufficient severity and magnitude to warrant an emergency declaration for all states, territories and the District of Columbia."

27.     The Trump Administration expressly recognized that with the

COVID-19 emergency, "many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State, and local public health measures that are being taken to minimize the public's exposure to the virus." *See Business Loan Program Temporary Changes; Paycheck Protection Program*, 13 CFR Part 120, Interim Final Rule (the "SBA PPP Final Rule").

28.     On March 25, 2020, in response to the economic damage caused by the COVID-19 crisis, the United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act, the CARES Act (P.L. 116-136). The CARES Act was passed by the House of Representatives the following day and signed into law by President Trump on March 27, 2020. This legislation included $377 billion in federally-funded loans to small businesses and a $500 billion governmental lending program administered by the United States Department of Treasury ("Treasury") and the SBA, a United States government agency that provides support to entrepreneurs and small businesses.

29.     On August 8, 2020, the SBA stopped accepting PPP Applications as the PPP ended.

### THE PPP: A PROGRAM DESCRIPTION

30.     As part of the CARES Act, the Federal Government created a $349 billion loan program, referred to as the Paycheck Protection Program or PPP, temporarily adding a new product to the SBA's 7(a) Loan Program ("SBA 7(a) Program" or "SBA 7(a) Loans").

31.     The PPP provided small businesses with loans to be originated from February 15, 2020, through June 30, 2020[3]. The PPP was created to provide American small businesses with eight-weeks[4] of cash-flow assistance and to allow a certain percentage of the loan to be forgiven if the loan is utilized to retain

---

[3] On June 30, the PPP Application deadline was extended until August 8, 2020.
[4] On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142), extended the eight-week period to twenty-four weeks.

employees and fund payrolls. Although the loans are administered by the Treasury and backed by the Federal Government, the loans are funded by private lenders, including the Defendants, that review and approve PPP Applications.

32.     The Treasury announced on April 3, 2020, that small businesses and sole proprietors could fill out an Application to apply and receive loans to cover their payroll and other expenses through approved SBA Lenders. Beginning on April 10, 2020, independent contractors and self-employed individuals could apply as well.[5]

33.     On April 24, 2020, President Trump signed the Paycheck Protection Program and Health Care Enhancement Act ("PPPEA"). The PPPEA added $310 billion in PPP funding, bringing the total PPP funds available to lend to $659 billion.

34.     On June 5, 2020, President Trump signed the Paycheck Protection Program Flexibility Act of 2020 ("Flexibility Act") (Pub. L. 116-142), which changed key provisions of the Paycheck Protection Program, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans. **The Flexibility Act did not change Defendants' statutory duty to pay Plaintiffs the Agent Fees Plaintiffs are owed**.

35.     The 2019 SBA Standard Operating Procedures[6] ("SBA SOP") and the SBA PPP Final Rule[7] (collectively, the "SBA Regulations"), consistent with

---

[5] *Paycheck Protection Program (PPP) Information Sheet: Borrowers*, Dep't of Treasury (last visited, June 18, 2020),
*https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf*
[6] https://www.sba.gov/sites/default/files/2019-02/SOP%2050%2010%205%28K%29%20FINAL%202.15.19%20SECURED%20copy%20paste.pdf. Last visited December 7, 2020.
[7] https://home.treasury.gov/system/files/136/PPP--IFRN%20FINAL.pdf. Last visited December 7, 2020.

the Treasury's Paycheck Protect Program (PPP) Information Sheet for Lenders[8] (the "PPP ISL"), describes a system to distribute the PPP loans that relies on SBA authorized Lenders – who approve and fund loan applicants – and independent agents, **hired by either the Borrower or Lender** – who provide small businesses with the necessary assistance enabling them to apply for a PPP loan.

36. Under the SBA Regulations and PPP ISL, a PPP Agent "can be:

- An attorney;

- An accountant;

- A consultant;

- Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant;

- Someone who assists a lender[9] with originating, disbursing, servicing, liquidating, or litigating SBA loans [("Lender Agent")];

- A loan broker; or,

- Any other individual or entity representing an applicant by conducting business with the SBA."[10]

37. Unlike the traditional SBA 7(a) Program, the SBA Regulations expressly contemplate and encourage Borrower Agents to assist small businesses with their Applications. The SBA Regulations allow for and set standards by which PPP Agents are to be paid for their work. **Specifically, the regulations require**

---

[8] *Paycheck Protection Program (PPP) Information Sheet: Lenders*, Dep't of Treasury (last visited, June 18, 2020), https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf?

[9] An agent that "assists a lender" is categorized by the SBA SOP as a lender agent ("Lender Agent") (footnote added).

[10] *Id. Paycheck Protection Program (PPP) Information Sheet: Lenders.*

**that PPP Agents be paid from a portion of the set fees provided to SBA Lenders for processing the PPP loan.**

38.     Congress delegated the authority to the SBA to determine the methodology and the maximum amount an Agent may collect in its Agent Fees.[11]

39.     Before the passage of the CARES Act, **Lenders were not compensated** by the SBA for originating SBA 7(a) Loans. Under the newly enacted SBA Regulations for PPP loans, Lenders are **generously compensated** for processing PPP loans ("Lender Fees") based on the amount funded to the Borrower. The SBA pays Lender Fees to Lenders who process PPP loans in the following amounts:

- Five percent (5%) for loans of not more than $350,000;
- Three percent (3%) for loans of more than $350,000 and less than $2,000,000; and
- One percent (1%) for loans of at least $2,000,000.[12]

40.     The SBA Regulations state, "**Agent fees will be paid by the lender out of the fees the lender receives from SBA**. **Agents may not collect fees from the borrower or be paid out of the PPP loan proceeds**. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan … may not exceed:

- One (1) percent for loans of not more than $350,000;
- 0.50 percent for loans of more than $350,000 and less than $2 million; and
- 0.25 percent for loans of at least $2 million."[13]

---

[11] "FEE LIMITS.—An agent that assists an eligible recipient to prepare an application for a covered loan may not collect a fee in excess of the limits established by the Administrator." CARES Act 15 USCA § 636 1102. (a)(2)(36)(P)(ii).
[12] 85 FR 20816 (3)(d).
[13] 85 FR 20816 (4)(c).

41.     The CARES Act authorized the Treasury to establish limits on Agent Fees. The Treasury, "in consultation with the Secretary, **determined that the agent fee limits set forth above are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans**."[14]

42.     In other words, when implementing the CARES Act, the Treasury determined that the best and quickest way to get the PPP loans to the small businesses was to establish **new** regulations where Lenders and Borrower Agents work together to quickly and efficiently process Applications.[15]

### *Plaintiffs are the Borrower's Agent, Not the Lender's Agent*

43.     By assisting businesses in preparing their Applications for PPP funding, PPP Agents played a critical role in fulfilling the goals of the CARES Act and ensuring adherence to the United States Congress's legislative intent. Indeed, the Senate directed the Treasury to "issue guidance to lenders **and** agents to ensure that the processing and disbursement of covered loans prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals…, women, and businesses in operation for less than 2 years."[16]

---

[14] *Id.* (emphasis added).

[15] Adding validity to the need to file this action, on May 27, 2020, United Community Banks, Inc. ("UCB"), received a civil investigative demand ("CID") from the U.S. Department of Justice (the "DOJ") pursuant to the False Claims Act. The CID directed UCB and its affiliated entities "to produce certain documents and respond to written interrogatories relating to the PPP loans approved by the Bank, the Bank's non-payment of fees to agents of borrowers and the Bank's policies related to payment or non-payment of agent fees." (United Community Banks, Inc., Form 8-K (last visited June 18, 2020), https://ir.ucbi.com/static-files/c7f8eaa8-d6bf-48e8-8ebc-a60c0bf3adea. UCB is a named defendant in another lawsuit based on the same allegations in the Northern District of Georgia, 1:20-cv-02026-LMM.)

[16] CARES ACT, PL 116-136, March 27, 2020, 134 Stat 281 (emphasis added).

44.     Congress saw the PPP as a symbiotic three-party program: the Agent, the Lender, and the Borrower. Each party was considered a co-equal in the process. Each played an essential role in effectuating the PPP's policies of putting scarce federal funds into Main Street America's hands to prevent economic collapse.

45.     The Final Rule states that "[t]he program requirements of the PPP identified in this rule temporarily supersede any conflicting Loan Program Requirement (as defined in 13 CFR 120.10) . (The "Conflicting Requirements").[17]

46.     Defendants freely (and hypocritically) accept the Conflicting Requirements implementing the payment of their Lender Fees from the SBA but refuse to acknowledge the Conflicting Requirements implementing the payment of Agent Fees.

47.     On or about August 27, 2020, the SBA reaffirmed its earlier stance on the PPP regulations as compared to the traditional SBA 7(a) Program by publishing the new SBA's Standard Operating Procedure 50 10 6, Part 2, Section B, page 224[18], which clarifies that, "Because Paycheck Protection Program (PPP) loans authorized under § 7(a)(b) of the Small Business Act are 7(a) loans, **this SOP applies to the making of PPP loans, to the extent that the SOP is not superseded by or in conflict with PPP-specific requirements**."

48.     Under the PPP, as well as the traditional SBA 7(a) Program, there are Lender Agents and Borrower Agents. These are two separate, distinct categories of agents, with separate SBA governing requirements.

49.     The Borrower Agent works for the Borrower. As detailed in the SBA SOP, "Employment of Agent Initiated by Applicant… When an Applicant employs an Agent: 1. The Agent may bill and be paid by the Applicant for providing packaging services as long as compensation is reasonable and customary for those

---

[17] 85 FR 20812 III 1

[18] Effective October 1, 2020 ("SBA SOP 2020").

services…"[19] As for the, "compensation is reasonable and customary for those services", as stated above, the SBA and Treasury Secretary Mnuchin determined that the Agent Fees "are reasonable based upon the application requirements and the fees that lenders receive for making PPP loans." [20]

50.     Immediately following the section in the SBA SOP titled "Employment of Agent Initiated by Applicant" is "Employment of Agent by Lender (not an LSP)." This section provides the rules that the Lender must follow when hiring its own Agent. "**When a Lender has decided to approve a loan application and needs assistance with the preparation of the paperwork for the application to SBA**, the loan closing, or preparation of the loan to sell it on the Secondary Market, **the Lender may use an Agent**…. 2. The Agent must bill and be paid by the Lender for all services and the Lender may not pass these charges through to the Applicant under any circumstances."[21]

51.     The Lender has the sole right to determine whether or not they will retain a Lender Agent. The Borrower has no right to approve or disapprove the Lenders' Agent. Similarly, per the SBA SOP and the SBA Regulations, Borrowers are free to choose their own Agent, and the Lender has no right to approve or disapprove the Borrowers' Agent, or to dictate the amount a Borrower's Agent will be paid.

52.     The Plaintiffs acted in the statutorily approved role of the Borrower's Agent for the Borrower's that obtained their PPP loans from the Defendants.

53.     **Nowhere in the CARES Act, the SBA SOP, the SBA SOP 2020, or the SBA Regulations does the federal government require, mandate, or even suggest that a Borrower Agent be approved by a Lender, either before**

---

[19] SBA SOP, Subpart B, ch 3, IX(D).
[20] *85 FR 20816 (4)(c).*
[21] SBA SOP, Subpart B, Ch. 3, IX(E) (emphasis added).

**or after the Agent assists the Borrower, in order for the Agent to be entitled to its Agent Fee**. What they do say is that the Lender must complete, sign, and submit the necessary forms for the Borrower's Agent to receive their Agent Fee, which Defendants refuse to do, even though the only way Defendants could be PPP Lenders is if they agreed to comply with **all** of the SBA Regulations.

### *Defendants were Legally Required to Complete, Sign, and Submit Form 159*

54.     In the traditional SBA (7)(a) Program, the Lender pays the Lender's Agent, and the Borrower pays the Borrower's Agent their respective Agent Fee. However, the SBA Regulations specifically overrode that possibility by stating, "**Agent fees will be paid by the lender out of the fees the lender receives from SBA. Agents may not collect fees from the borrower or be paid out of the PPP loan proceeds**." Therefore, the traditional SBA SOP is in "conflict with PPP-specific requirements," meaning the Conflicting Regulations apply. Therefore, the Lender is legally required to pay the Borrower's Agent the Agent Fee normally paid by the Borrower.

55.     In order for the Borrower to pay the Borrower's Agent under the traditional 7(a) Program, the Borrower would use Form 159, which the Borrower, the Borrower's Agent, and the Lender must sign. But because the SBA Regulations overrode who pays the Borrower's Agent, the SBA **requires the Lender to use Form 159.** "The Applicant or the Lender, depending on who paid or will pay the Agent, **must use** SBA Form 159, 'Fee Disclosure Form and Compensation Agreement,' to document the fees."[22] **The SBA Regulations specifically put the Lender into the Borrower's shoes and require the Lender to fill out and sign the required Form 159.**

56.     SBA Form 159 states: "Who must complete this form?: **This form must be completed and signed by the SBA Lender and the Applicant whenever an Agent is paid by either the Applicant or the SBA Lender in**

---

[22] SBA SOP, Subpart B, ch. 3, VIII(B)(1).

**connection with the SBA loan application**. Each Agent paid by the Applicant to assist it in connection with its application must also complete and sign the form. **When an Agent is paid by the SBA Lender, the SBA Lender must complete this form and the SBA Lender and Applicant must both sign the form.**"[23]

57.     The Final Rule states that Agent fees will be paid by the lender out of the fees the lender receives from the SBA. Since the Lender is paying the Agent Fee, the Lender is required to fill out Form 159.

58.     The only time the Agent is required to sign Form 159 is if the Agent is being paid by the Applicant. Under the PPP, the Applicant is expressly disallowed to pay the Agent, shifting the responsibility to the Lender. The Agent is not required to fill out or sign Form 159.

59.     Additionally, supporting that it is the Lenders' legal responsibility to submit Form 159 to the SBA, the SOP requires that, **"Lenders must submit SBA Form 159 to Fiscal Transfer Agent ("FTA") on loans that involve payment of fees**, including, but not limited to, those covering any packaging fees charged by the Lender or where the Lender paid the Agent fee."[24]

60.     Nowhere in the CARES Act, the SBA Regulations, the SOP, or Form 159, does the Lender have the power to tell the Borrower they cannot use the Agent of their choosing or decide to not fill out, sign, and submit Form 159.

61.     Instead, each of the Defendants: (1) stated they were not paying Agent Fees or failed to respond to Plaintiffs' request for Agent Fees; (2) provided some of the necessary SBA forms that the Borrower was required to fill out, but unlike other Lenders, Defendants specifically excluded Form 159; (3) designed their Application process to avoid learning the fact or identity of any Borrower Agents, so the Lender did not have to fill out Form 159; or, (4) even after learning the identity of the Agent, Defendants refused to comply with the SBA SOP and fill

---

[23] SBA Form 159, at p. 1.
[24] SBA SOP, Subpart B, Ch. 3, VIII(B)(6).

out Form 159 and submit it to the SBA after the Borrower's PPP loan was funded.

62.    According to the Final Rule, "Lenders must comply with the applicable lender obligations set forth in this interim final rule." [25] Defendants agreed to comply with the SBA Regulations, which include, "Prior to the services being provided, the Lender **must** advise the Applicant in writing that the Applicant is not required to obtain or pay for unwanted services. If fees are charged to the Applicant, an SBA Form 159 must be completed." [26] Yet, Defendants failed to provide such notice to the Borrower. Defendants' failure to comply with SBA Regulations not only required the filing of this lawsuit but increased the potential for fraud by their failure to warn.

63.    Under the SBA Regulations, it is impossible for Plaintiff or the Borrower to have accurately submitted Form 159 prior to the Lender approving a Borrower's PPP loan. The Agent Fee was a set percentage of the funded PPP loan amount and with most Borrowers that Plaintiffs worked with, the initial Application amount requested was adjusted by the Lender based on the methodology each Lender used to approve the loan amount. Numerous additional hours were spent by the Agents between the initial submission of the Application and the final funding of the PPP loans, making the itemization of services requested on Form 159 for Agent Fees over $2,500 impossible to complete prior to the PPP loan being approved by the Lender.

64.    Assuming, arguendo, that the Plaintiffs or Borrowers were supposed to submit Form 159 to the Lender, then, as described in detail above, even though Plaintiffs were ready, willing, and able to fill out Form 159, Defendants thwarted Plaintiffs' ability of submission by not allowing Plaintiffs or Borrowers to submit Form 159 or by stating Defendant was not paying Agent Fees, making any attempt by Plaintiffs in submitting Form 159 futile. As Form 159 is required to be

---

[25] 85 CFR 20812 III 1.

[26] SBA SOP, Subpart B, VI, A 3.

submitted **after** the Borrower's loan has funded, Plaintiffs remain ready, willing, and able to fill out Form 159 if the Court finds that Plaintiffs are required to do so.

### *PLAINTIFFS ASSISTED SMALL BUSINESS BORROWERS WITH APPLYING FOR PPP LOANS*

65.     To assist its clients with preparing Applications for a PPP loan through Defendants, Plaintiffs spent considerable time familiarizing themselves with the CARES Act and the related SBA Regulations. In particular, relevant provisions include Section 1102, which permits the SBA to guarantee 100% of SBA 7(a) Loans under the PPP, and Section 1106 of the Act, which provides forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

66.     Complying with the SBA Regulations, Plaintiffs assisted Applicants in the preparation of their Application. As contemplated by the Federal Government, such assistance contributed to the successful funding of the Applicants' PPP loans with a Defendant.

67.     If not for the Borrowers' Agents, millions of small businesses would have had difficulty or been unable to apply for PPP loans.

68.     Based on the SBA Regulations, Plaintiffs understood that they were not allowed to charge Applicants any fee relating to the Application process and that they were only permitted to receive compensation from the PPP Agents' portion of the Lender Fees the Federal Government entrusted to the Lenders for the PPP Agents' benefit.

69.     Plaintiffs further understood that they were not entitled to the Agent Fees until the Lender received its Lender Fees. Based on information and belief, Defendants have received the Lender Fees for the Applicants Plaintiffs assisted as well as the members of the Class assisted, thereby making the Agent Fees immediately due to Plaintiffs.

70.     To participate in the PPP, "Lenders **must** comply with the applicable

lender obligations set forth in this [Final Rule]…"[27].

71.     Therefore, Plaintiffs believed in good faith that Defendants would comply with the law and pay Plaintiffs the statutorily required Agent Fees.

72.     However, Defendants violated the SBA Regulations because they did not pay Plaintiffs the Agent Fees the Federal Government entrusted to the Defendants for the benefit of the Plaintiffs. Instead, Defendants have illegally retained the Agent Fee portion of the Lender Fees.

73.     Defendants, as Lenders under the PPP, lack any legal authority under the SBA Regulations to withhold payment of the Agent Fees to Plaintiffs.

74.     Defendants received, and are keeping for their benefit, money specifically identifiable as belonging to the Plaintiff under the SBA payment mechanisms.[28]

75.     As a result of Defendants' unlawful actions, Plaintiffs and the Class have suffered financial harm by being deprived of the statutorily mandated compensation for the assistance they provided in their critical role as a PPP Agent, assisting Applicants in the preparation of their PPP Application. Defendants barred Plaintiffs from receiving compensation for their role as PPP Agents in the PPP process, which role resulted in significant benefits to both small businesses and the Lenders.

---

[27] 85 FR 20812 (1). (emphasis added).

[28] Lenders are required to submit SBA Form 1502 to receive their Lender Fees, which by statute include the Agent Fees. Each PPP loan is listed on a separate line and submitted to the SBA for payment. In order to make the calculation of the individual Lender Fee and Agent Fee traceable for the Lender, the "SBA will make a payment for each loan on an individual basis so that Lenders will be able to match the received payment with the corresponding loan." SBA Procedural Notice #5000-20036. https://www.sba.gov/sites/default/files/2020-07/5000-20036-508.pdf. Last visited December 7, 2020.

## IV. CLASS ALLEGATIONS

76.     Plaintiffs brings this action on behalf of themselves and all other similarly situated Class Members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Nationwide Class:

> All Agents who assisted a business in preparing an Application for a PPP loan pursuant to the CARES Act (the "Nationwide Class").

77.     To the extent that a Nationwide Class is not certified, in the alternative, Plaintiffs brings this action on behalf themselves, and all other similarly situated Class Members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Statewide Class:

> All Agents who assisted a business in California in preparing an Application for a PPP loan pursuant to the CARES Act (the "Statewide Class").

The Statewide and Nationwide Class may hereafter be referred to as the "Class".

78.     For purposes of the Class definition, the term "Agent" has the same meaning as an "agent" under the SBA Regulations.

79.     Plaintiffs reserve the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with Plaintiffs' motion for class certification, or any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

80.     The following are excluded from the Class and/or Subclass: (a) any

Judge or Magistrate presiding over this action and members of their families; (b) the officers, directors, or employees of Defendants; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

81.   *Numerosity:* The Class is composed of hundreds or thousands of Agents (the "Class Members"), whose joinder in this action would be impracticable. The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

82.   *Commonality and Predominance:* Common questions of law and fact affect the Class. These questions of law and fact predominate over individual questions affecting individual Class Members and include, but are not limited to, the following:

- a. Whether Plaintiffs are an "agent" as that term is defined by the Cares Act and relevant regulations;

- b. Whether Defendants were obligated to pay Plaintiffs and the Class Agent Fees from the Lender Fees it received under the CARES Act;

- c. Whether Defendants failed to pay Agent Fees they were required to pay;

- d. Whether Class Members are entitled to damages; and if so, in what amount;

- e. Whether Defendants are likely to continue to mislead the public and Class Members and continue to violate SBA Regulations regarding paying Agents their earned fees under the CARES Act;

- f. Whether Plaintiffs and Class Members are entitled to an award of reasonable attorney's fees, pre-judgment interest and costs of suit; and

- g. Whether Defendants were unjustly enriched by their practice of refusing to pay Agent Fees.

83.   *Superiority*: In engaging in the conduct described herein, Defendants have acted and/or failed to act on grounds generally applicable to Plaintiffs and

other Class Members. Such behavior requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members. A class action is superior to all other available means for the fair and efficient adjudication of Plaintiffs' and the Class Members' claims. Few, if any, Class Members could afford or would deem it economically reasonable to seek legal redress of the wrongs complained of herein on an individual basis. Absent a class action, Class Members would not likely recover or have the chance to recover, and Defendants would be permitted to retain the fruits of their misdeeds. Any difficulties that might occur in the management of this proposed class action are insubstantial. See Fed. R. Civ. P. 23(b)(1)(A).

84.     *Typicality*: Plaintiffs' claims are typical of, and are not antagonistic to, the claims of the other Class Members. Plaintiffs and the Class Members have been injured by Defendants' uniform, unfair and unlawful practice of denying PPP Agent Fees, as alleged herein. The factual and legal basis of Defendants' liability to Plaintiffs and each Class Member as a result of Defendants' actions are described herein.

85.     *Adequacy*: Plaintiffs are an adequate representative of the Class because it is a member of the Class, and Plaintiffs' interests do not conflict with the interests of the other Class Members that Plaintiffs seek to represent. Plaintiffs will fairly and adequately represent and protect the interests of the other Class Members. Plaintiffs have retained counsel with substantial experience in litigating complex cases, including class actions. Both Plaintiffs and their counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiffs nor counsel have any interest adverse to other Class Members.

86.     Plaintiffs are informed and believes that Defendants keep extensive computerized records of their loan applications through, *inter alia*, computerized loan application systems, and Federally-mandated record-keeping practices.

Defendants have one or more databases through which all of the Applicants may be identified and ascertained, and it maintains contact information, including email and mailing addresses. From this information, the existence of the Class Members (i.e., the PPP Agent for the Applicant) can be determined, and thereafter, a notice of this action can be disseminated in accordance with due process requirements.

## V. CAUSES OF ACTION
### COUNT I
### DECLARATORY RELIEF
### AGAINST ALL DEFENDANTS

87.     Plaintiffs hereby incorporate by reference the foregoing allegations as if fully set forth herein.

88.     Plaintiffs assisted their clients with the PPP Loan application process, allowed Defendants to secure customers for PPP lending, and satisfied all prerequisites for obtaining PPP Agent Fees. Defendants failed to pay Agent Fees owed to Plaintiffs as required by the SBA Regulations. Instead, Defendants kept the Agent Fees for themselves, in direct violation of the SBA Regulations.

89.     An actual controversy has arisen between Plaintiffs and Defendants as to the Agent Fees owed to Plaintiffs by Defendants. Through their conduct of refusing to pay Agent Fees and otherwise, Defendants have denied that they owe the statutorily required Agent Fees to Plaintiffs and the Class.

90.     Plaintiffs and the Class seek a declaration, in accordance with SBA Regulations and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that Defendants are obligated to fill out, sign, and submit Form 159 to the SBA, set aside money to pay the Agent Fees, and to pay the Agent Fees the Borrowers' Agents have earned for the work performed on behalf of their clients that received a PPP loan from the Defendants.

91.     Plaintiffs and the Class seek a declaration in accordance with the

SBA Regulations that a portion of the Lender Fees paid to Defendants must be paid to Plaintiffs and the Class.

## COUNT II

## UNJUST ENRICHMENT

## AGAINST ALL DEFENDANTS

92.     Plaintiffs hereby incorporate by reference the foregoing allegations as if fully set forth herein.

93.     Plaintiffs and the Class Members are Borrower Agents who assisted small businesses in preparing their Application for a PPP loan from Defendants. This assistance directly conferred a benefit upon Defendants, who, in turn, received a federal guarantee of repayment of the funds, interest on the lent amount, as well as a substantial Lender Fee for each PPP loan from the U.S. Government.

94.     Defendants knew or should have known that they would directly receive a specific financial benefit from the Lender Fees, which included the Agent Fees, as well as the interest the Defendants earn for funding the Borrowers' PPP loan based on the Application which Plaintiffs and the Class Members assisted the Borrowers in preparing for submission to Defendants.

95.     Defendants earned their Lender Fees in large part based on the work of Plaintiffs and the Class Members.

96.     Defendants were aware that Borrowers were using Borrower Agents and continued to accept Borrowers' Applications knowing full well that a Borrower Agent would likely be involved.

97.     Defendants are all sophisticated SBA lenders and are well aware of the benefit an Agent has in ensuring the successful funding of an SBA loan.

98.     Knowing full well that there was a high degree of likelihood that a Borrower's Agent would be involved in the transaction, Defendants accepted and funded the Borrower's PPP loan earning them their Lender Fee, a portion of which is the Agent Fee.

99.     Plaintiff believed they would be compensated for their work through the Agent Fee owed to them by Defendants.

100.     Defendants knew that Form 159 was required for Plaintiffs to receive their Agent Fees, but chose not to provide Form 159 or allow the submission of form 159.

101.     Defendants intended that Plaintiff rely upon their conduct in that Defendants agreed to comply with the SBA Regulations, and Plaintiff reasonably relied on Defendants' conduct when fulfilling its obligations as the Borrower Agent.

102.     Plaintiff was ignorant of the true facts behind Form 159.

103.     Plaintiff suffered a detriment because of Defendants conduct.

104.     If not for the diligent work of the Plaintiffs and Class Members, the amount of Lender Fees Defendants could have earned would have been substantially reduced.

105.     Defendants want Plaintiffs to work for free, while the Defendants keep 100% of the $18.2 billion in Lender Fees paid by the federal government to the Lenders.[29]

106.     Although Plaintiff conferred a substantial benefit to the Defendants by assisting the Borrower with the Application, thereby allowing the Lender to fund the PPP loan and earn its Lender Fees[30], Plaintiff was not hired by the Lender

---

[29] Based on final PPP loan data released by the SBA, Lenders were paid an estimated $18,289,452,785 in Lender Fees which included the Agent Fees the federal government entrusted to the Lenders to be paid to the Borrower Agents. https://home.treasury.gov/system/files/136/SBA-Paycheck-Protection-Program-Loan-Report-Round2.pdf.

[30] The Lender Fees generated in part by the work of the Borrower Agents are not small. Like Agent Fees, Lender Fees are based strictly on the dollar amount of the loan. It does not matter how much work or effort the Lender put into funding the loan. A Lender will earn $100,000 in Lender Fees on funding a $10 million loan. Based on publicly available information, Defendants earned approximately the following amount in Lender Fees, which includes the Agent Fees entrusted to

to assist the Lender; the Borrower hired Plaintiff to assist the Borrower

107.    To participate in the PPP, "Lenders **must** comply with the applicable lender obligations set forth in this [Final Rule]…"[31]. Despite their efforts as PPP Agents, Defendants have failed to pay Plaintiffs and the Class Members the Agent Fees in violation of the Final Rule.

108.    Instead, Defendants have retained the full amount of the Lender Fees from which the SBA Regulations require Agent Fees to be paid. Therefore, Defendants have unfairly retained fees intended to benefit and compensate Plaintiffs and the Class for their efforts in promoting the interests of the CARES Act and ensuring small businesses receive PPP loans.

109.    By holding themselves out as PPP lenders and certifying that they would comply with their lender obligations, Defendants' conduct requested Plaintiffs, and the Class Members, to assist Applicants with their PPP Applications and have the Applications submitted to Defendants for approval.

110.    Defendants retention of the Agent Fees to which Plaintiffs and the Class Members are entitled constitutes an undue advantage or is, at a minimum, unconscionable.

111.    Defendants have been, and continue to be unjustly enriched, to the detriment and at the expense of the Plaintiffs and the Class Members.

112.    Defendants have unjustly benefitted through the illegal retention of the Agent Fee portion of the Lender Fees paid by the Federal Government to the Defendants for the benefit of the Plaintiffs and the Class.

113.    If Defendants' practice of retaining the full amount of Lender Fees

_____

Defendants by the SBA: Citibank - $118 million, U.S. Bank - $299 million, Chase $1 billion, Wells - $447 million, BofA - $990 million, Live Oak - $61 million, and Harvest - $38 million. Source: https://home.treasury.gov/policy-issues/cares-act/assistance-for-small-businesses/sba-paycheck-protection-program-loan-level-data. Last visited December 2, 2020.
[31] 85 FR 20812 (1) (emphasis added).

despite the efforts of PPP Agents who, under the SBA Regulations, are entitled to a portion of the Lender Fees as Agent Fees, then the purpose and intent of the CARES Act would be upset because PPP Agents would receive no due compensation for assisting small businesses seeking a PPP Loan.

114. Plaintiffs and the Class have no other means of obtaining compensation because the **SBA Regulations prohibit PPP Agents from receiving payment from any source other than the Lender Fees and expressly prohibit collecting any fees from the Applicants**.

115. Defendants' conduct willfully and intentionally negates the terms of the SBA Regulations by unilaterally refusing to fill out, sign, and submit the required SBA Form 159 and to forward to the PPP Agents the regulatorily required Agent Fees that the Federal Government entrusted to the Lenders. Defendants' actions render those terms superfluous and undermine the intent of Congress to promote small business loans under the PPP and CARES Act.

116. Defendants should not be allowed to retain the proceeds from the benefits conferred upon it by Plaintiffs and the U.S. Government.

117. Plaintiffs and the Class were injured as a direct and proximate cause of Defendants' misconduct. Therefore, Plaintiffs seeks disgorgement of Defendants' unjustly acquired profits and other monetary benefits resulting from Defendants' unlawful conduct, an injunction preventing Defendants from continuing their unlawful conduct, and all other relief afforded under the law that this Court deems just and proper.

**COUNT III**

**CONVERSION**

**AGAINST ALL DEFENDANTS**

118. Plaintiffs hereby incorporate by reference the foregoing allegations as if fully set forth herein.

119. Under the SBA Regulations, Plaintiffs and the Class, as PPP Agents,

have a right to, title in, and the legal right of possession of, Agent Fees that must be paid from the amount of Lender Fees provided to Defendants for lending money pursuant to approved Applications.

120.    The SBA Regulations state that "Agent fees *will* be paid out of lender fees" and provide guidelines on the amount of Agent Fees that should be paid to the PPP Agent, depending on the size of the PPP loan secured.

121.    Additionally, the SBA Regulations require that Lenders, not Borrowers, pay the Agent Fees and fill out, sign, and submit Form 159 to the SBA. The SBA Regulations unequivocally state that "Agents may not collect fees from the applicant."

122.    Plaintiffs and the Class fulfilled the role of PPP Agent by assisting small businesses with their Applications. Due to Plaintiffs' efforts, Defendants made federally backed PPP loans, entitling Defendants to Lender Fees from the U.S. Government. As such, Plaintiffs have a right to receive, and title to, the regulatorily-mandated Agent Fees.

123.    Although Plaintiffs are entitled to Agent fees under the SBA Regulations, Defendants have failed to pay the required Agent Fees, which the Federal Government paid to the Defendants as part of the Lender Fees. Defendants have no legal claim, authorization, or approval for this wrongful withholding of the Agent Fees. Therefore, Defendants have appropriated, assumed, and exercised dominion over the Plaintiffs' and Class' Agent Fees.

124.    In California, money may be the subject of a conversion claim if the money can be described, identified, or segregated, and an obligation to treat it in a specific manner is established. That requirement is met because the Agent Fees are a segregated portion of the Lender Fees awarded through the SBA Regulations for a successfully funded PPP loan.

125.    The exact amount that each Defendant owes Plaintiffs is listed under the "Individual Defendant's Allegations" section of this SAC.

126.    At the time Defendants unlawfully retained the Agent Fees, Defendants knew or should have known that the Agent Fees were owed to Plaintiffs and the other Class Members.

127.    Defendants knew or should have known that they would directly receive a specific financial benefit from the Lender Fees, which included the Agent Fees, as well as the interest the Defendants earns for funding the Borrowers' PPP loan based on the Application which Plaintiffs and the Class Members assisted the Borrowers in preparing for submission to Defendants.

128.    The right to Agent Fees was immediately conferred upon Plaintiffs and other Class Members the moment Defendants received their Lender Fees from the SBA for funding PPP loans to Borrowers that Plaintiffs and other Class Members assisted in preparing the Borrower's Application.

129.    Defendants' improper acts or practices of refusing to pay Plaintiffs and the other Class Members the mandated Agent Fees are the proximate cause of the damages sustained by the Plaintiffs and the Class Members, and such retention of the mandated Agent Fees constitutes an undue advantage or is, at a minimum, unconscionable.

130.    Defendants' conduct manifests a knowing and reckless indifference toward, and a disregard of, the rights of Plaintiffs and the Class Members.

131.    By withholding the Agent fees, Defendants have maintained wrongful control over Plaintiffs' property inconsistent with Plaintiffs' entitlements under the SBA Regulations.

132.    Defendants committed civil conversion by retaining monies owed to Plaintiffs and the Class.

133.    Plaintiffs and the Class have been injured as a direct and proximate cause of Defendants' misconduct. Plaintiffs, as such, seeks recovery from Defendants in the amount of the owed Agent Fees and for all other relief afforded under the law.

# COUNT IV

# BREACH OF AN IMPLIED CONTRACT

# AGAINST ALL DEFENDANTS

134.   Plaintiffs hereby incorporate by reference the foregoing allegations as if fully set forth herein.

135.   Plaintiffs and the Class, as PPP Agents, conferred a benefit upon Defendants by assisting Applicants with their PPP Applications that were submitted to Defendants. Based in part on Plaintiffs' work, Defendants received interest on the PPP loan as well as the Lender Fee from the Federal Government, approximately 20% of which was to be forwarded to the Borrowers' Agents (i.e., Plaintiffs and the Class) as payment for the Agent Fee.

136.   In performing work to assist Applicants in preparing Applications for a PPP loan for their small business, Plaintiffs and the Class had a reasonable expectation of compensation. That reasonable expectation stemmed from the SBA SOP and SBA Regulations, which Defendants certified they would comply with, which explicitly stated Agents would receive Agent Fees from the Lenders. Those Agent Fees were to be paid out of a portion of the Lender Fees.

137.   Defendants certification of their compliance with SBA Regulations and the Final Rule provided mutual assent to the terms and conditions of the PPP, which included the payment of Borrower Agent Fees.

138.   Despite that reasonable expectation and the plain language of the SBA SOP and SBA Regulations, Defendants have failed to pay Plaintiffs and the Class the statutorily required Agent Fees.

139.   Instead, Defendants have retained, or stated their entitlement to retain, the Agent Fee portion of the Lender Fees for themselves and thereby, benefited from the work performed by Plaintiffs and the Class.

140.   It would be unjust to allow Defendants to retain the benefit of Plaintiffs' and the Class's Agent Fees in light of their reasonable expectation of

payment for the services they rendered.

141.   Defendants, regardless of any intent of the parties, have a quasi-contractual obligation to pay for the services by which they benefited and to compensate Plaintiffs and the Class for the reasonable value of their services.

142.   Plaintiffs and the Class have been injured as a direct and proximate cause of Defendants' misconduct. Plaintiffs, as such, seeks recovery from Defendants in the amount of the owed Agent Fees and for all other relief afforded under the law.

**COUNT V**

**VIOLATION OF THE "UNFAIR" PRONG OF THE UCL**

**CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, ET SEQ.**

**AGAINST ALL DEFENDANTS**

143.   Plaintiffs hereby incorporate by reference the foregoing allegations as if fully set forth herein.

144.   The California Unfair Competition Law (hereinafter "UCL") defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice. A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

145.   Defendants have committed unfair acts and concealed and omitted material facts that have harmed Plaintiffs and the Class.

146.   Specifically, Defendants, despite their obligations under the SBA Regulations and SBA SOP, have failed to fill out, sign, and submit Form 159 and to pay the Plaintiffs and the Class the required Agent Fees, which the Federal Government paid to the Defendants as part of the Lender Fees. Defendants' conduct constitutes an unfair act because Defendants received Lender Fees as a result of Plaintiffs' and the Class's efforts to assist Applicants in the Application process to secure PPP loans through Defendants, who are SBA approved lenders,

and who agreed to comply with the SBA Regulations and SBA SOP requiring such payment.

147.    By Defendants holding themselves out as PPP Lenders, Defendants necessarily held themselves out as promising to follow the mandatory PPP guidelines and regulations.

148.    Nevertheless, Defendants have failed to provide Plaintiffs and the Class payment in the amount of the mandatory Agent Fees and instead retained the Agent Fee portion of the Lender Fees for themselves.

149.    Defendants also concealed and omitted material information, specifically, that despite holding themselves out as PPP lenders under the PPP program, that Defendants would violate the law and refuse, and continue to refuse despite clear regulatory guidance, to pay regulatorily-mandated Agent Fees. Had Plaintiffs and the Class known that Defendants would refuse to pay Agent Fees, they would have taken their loans to other SBA Lenders who complied with the SBA Regulations.

150.    Defendants' unfair acts and omissions occurred in connection with the sale or advertisement of services, namely, services related to the processing and financing of PPP loans under the CARES Act and SBA Regulations.

151.    Defendants intended that Plaintiffs and the Class rely on their omissions because, had they stated they would not pay Agent Fees as required under the SBA Regulations, Plaintiffs and the Class would not have helped secure PPP loans from Defendants for their clients. By concealing and omitting their intention not to pay required Agent Fees, Defendants improperly obtained business from Plaintiffs and the Class for which Defendants were compensated through the Lender Fees.

152.    Plaintiffs and the Class have been injured as a direct and proximate cause of Defendants' misconduct. Plaintiffs, as such, seek recovery from Defendants in the amount of the owed Agent Fees, and for all other relief afforded

under the law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for the following relief:

a. For an Order certifying the Class as defined above, appointing Plaintiffs as Class representative, and appointing Plaintiffs' counsel as Class counsel;

b. For an Order declaring Defendants' actions to be unlawful;

c. For a declaration that all regulatorily-mandated and calculated Agent Fees are owed to Plaintiffs and the Class and should be deposited into a mutually agreeable fund or funds within 60 days, to be distributed to the PPP Agents who are entitled to the funds;

d. For all injunctive and other equitable relief available to Plaintiffs and Class Members;

e. For an award of all recoverable compensatory, statutory, and other damages sustained by Plaintiffs and Class Members;

f. For reasonable attorneys' fees and expenses as permitted by applicable statutes and law;

g. For costs related to bringing this action;

h. For pre- and post-judgment interest as allowed by law; and,

i. Such further relief at law or in equity that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Class, demand a trial by jury on all issues so triable.

Dated: December 7, 2020                     Respectfully submitted,

1

*/s/ Michael E. Adler*
GRAYLAW GROUP, INC.
Michael E. Adler, Esq. (CA Bar 236115)
26500 Agoura Road, #102-127
Calabasas, CA 91302
Telephone: (818) 532-2833
Facsimile: (818) 532-2834

2

3

4

5

6

DHILLON LAW GROUP INC.
Harmeet K. Dhillon (CA Bar No. 207873)
Nitoj P. Singh (CA Bar No. 265005)
177 Post St., Suite 700
San Francisco, CA 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

7

8

9

10

11

GERAGOS & GERAGOS, PC
Mark J. Geragos (CA Bar No.: 108325)
Ben J. Meiselas (CA Bar No.: 277412)
644 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 625-3900
Facsimile: (213) 232-3255
*Attorneys for Plaintiffs and the Proposed Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28